WILLIAM ECKERD, *Appellee*, v. JOHN WEVE, *Appellant*.

No. 17,244.

SYLLABUS BY THE COURT.

··1. DAMAGES — *Assault and Battery — Contributory Negligence.* The doctrine of contributory negligence as a defense has no proper application to an action for damages for an assault and battery.

: 2. ———— *Malice—Question for Jury.* While malice may be inferred from the intentional use of a deadly weapon, the inference and the weight to be given to it are for the jury to determine, considering the character of the instrument, the manner in which it is used, and all the attendant circumstances.

: 3. EVIDENCE—*Motive of Witness.* While the circumstances attending the act of a party are competent evidence of the condition or state of his mind in doing it, his own testimony as to his motive, purpose and intent is also competent.

4. FINDINGS—*Inconsistency of*. The findings of a jury upon the several items of damages allowed are examined, and it is held that they are inconsistent and can not be harmonized.

Appeal from Reno district court. Opinion filed November 11, 1911. Reversed.

*F. F. Prigg, C. M. Williams,* and *F. L. Martin,* for the appellant.

*F. P. Hettinger, E. T. Foote,* and *James Hettinger,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for an assault and battery. The answer alleged that the plaintiff made the first assault and that the defendant acted in reasonable self-defense. Judgment was rendered for the plaintiff and the defendant appeals.

The appellee was an employee of the appellant in operating a threshing machine. He was directed to do certain work upon the separator. Because of some criticism of his work he declared that he would quit, but nevertheless immediately accompanied the machine and the appellant's other employees to another place where threshing was to be done, and began a quarrel which the appellant sought to avoid. He used abusive language, saying, among other things, "You ain't got your Winchester with you to-day," and when the defendant said that he could get it if he had to, the plaintiff replied, in substance, "You will need it before you get through with me." The appellant, who was upon the separator, then hurriedly picked up a cylinder wrench from the top of the separator, where it was lying with other tools, and threw it at the appellee, who was standing on the ground near by, striking him upon the head, fracturing the skull and causing serious injuries. Other details, with some of the language used, will be referred to later.

48—85 KAN.

Findings were made by the jury as follow:

"1. Did the plaintiff, Eckerd, begin the quarrel at Tucker's with the defendant, Weve, which resulted in the injury sued for in this action? Ans. Yes.

"2. Did the defendant, Weve, request the plaintiff several times to go away and that he did not want to quarrel or fight with him? Ans. Yes.

"3. Did the plaintiff, Eckerd, intend to provoke a quarrel with the defendant when he went out to the separator after dinner? Ans. Yes.

"4. Did the defendant, Weve, desire and try to avoid having a quarrel and difficulty with the plaintiff? Ans. Yes.

"5. Would the defendant, Weve, have struck plaintiff, as alleged in the petition, if he had not thought it was necessary to defend himself? Ans. Yes.

"6. How much do you allow the plaintiff, if anything, for actual damages? Ans. $1000.

"7. How much do you allow the plaintiff, if anything, for punitive or exemplary damages? Ans. ———.

"8. How much do you allow the plaintiff, if anything, for pain and suffering? Ans. $1000.

"9. How much do you allow the plaintiff, if anything, for permanent injury? Ans. $2700.

"10. How much do you allow the plaintiff, if anything, for medical expenses and for hospital fees? Ans. $300.

"11. Were any blows struck either [by] plaintiff or defendant before the throwing of the wrench by the defendant, which resulted in the injury to the plaintiff? Ans. No.

"12. Was plaintiff rushing at this defendant with his hand on his hip pocket and threatening him when the wrench was thrown? Ans. No."

The appellant requested instructions to the effect that if the plaintiff was the aggressor and began the quarrel or affray he could not complain because he was met with a too vigorous defense. He requested an instruction:

"That whenever it appears that the plaintiff, who seeks to recover damages for the alleged wrongful act of another, was himself guilty of any negligence or wrongful act which had a material effect in producing

Eckerd v. Weve.

the injury or substantially contributed toward it, he is not entitled to recover. If you find in this case, from all of the evidence in the case, that the plaintiff committed a breach of the peace by abusing and reviling the defendant and by offering to fight him and refused to go away from the defendant and permit him to continue his work in peace when so requested by the defendant, but persisted in threatening the defendant and in offering to fight him and in abusing and reviling him until the defendant, either in what he believed to be the lawful defense of his person or in the heat of passion, struck the plaintiff as alleged, your verdict should be for the defendant."

The argument is made that if a person is guilty of any negligent or wrongful act which naturally produces or tends to produce an injury complained of there can be no recovery. This is not the law as applied to actions of this character. The action is for damages for a willful assault and battery and not for negligence. The doctrine of contributory negligence has no room for application in this case. (1 Thomp. Neg. § 247.)

"An intentional and unlawful assault and battery, inflicted upon a person, is an invasion of his right of personal security, for which the law gives him redress, and of this redress he can not be deprived on the ground that he was negligent and took no care to avoid such invasion of his right." (*Steinmetz v. Kelly,* 72 Ind. 442, 446.)

"The doctrine of contributory negligence has no application in an action for assault and battery. There can be no contributory negligence except where the defendant has been guilty of negligence to which the plaintiff's negligence could contribute. An assault and battery is not negligence. The former is intentional; the latter is unintentional." (*Ruter v. Foy,* 46 Iowa, 132.)

The vital question in this case was whether the appellant acted reasonably in self-defense, or willfully and maliciously, in inflicting the injury. (1 Cooley, Torts, 3d ed., p. 286; *Trogden v. Henn,* 85 Ill. 237; *Brown v. Gordon,* [1 Gray] 67 Mass. 182; *Gutzman v.*

*Clancy*, 114 Wis. 589, 90 N. W. 1081, 58 L. R. A. 744.)
Upon this question the court instructed the jury:

"If you believe from the evidence that the plaintiff
was in the first instance the aggressor and made an
assault upon the defendant, the defendant would have
the right to use such force in resisting such assault and
protecting himself against harm and injury therefrom
as appeared to him at the time, acting in good faith, to
be reasonably necessary, and in such case the defendant
would not be liable for any injury resulting to the plain-
tiff from the force used by the defendant in such re-
sistance.

"However, in such case, if the defendant wantonly,
willfully and maliciously used more force than was nec-
essary to resist such assault, he would be liable to the
plaintiff for damages resulting therefrom."

The appellant requested an instruction upon this
point as follows:

"The jury are instructed that in no event can the
plaintiff recover in this case unless he proves by a
preponderance of the testimony that the defendant in-
jured him on account of the willful, wanton or malicious
use of excessive force, and unless the plaintiff has
established this fact by a preponderance of the testi-
mony, your verdict should be for the defendant."

The instruction requested apparently restricts the
jury to a consideration of the plaintiff's evidence only,
in finding whether malice was shown; otherwise it is in
harmony with the one given. No error is discovered in
any of the instructions given, unless it be in the fol-
lowing:

"If you find from the evidence that the defendant in-
tentionally used a deadly weapon upon the plaintiff,
malice, wantonness and willfulness, within the meaning
of the law, will be inferred from such act, unless you
believe, under all of the evidence of the case and in
accordance with the rules of these instructions, that
such use of a deadly weapon was in self-defense and
justifiable."

This is open to criticism, especially because of the use
of the imperative "will" instead of a permissive term.

While malice may be inferred from the intentional use of a deadly weapon, the inference and the weight to be given to it are for the jury to determine, considering the character of the instrument, the manner in which it is used, and all the attendant circumstances. (Wharton, Crim. Ev., 8th ed., § 764; 4 Ell. Ev. § 3015; 4 Wig. Ev. § 2511*b; The State v. Earnest,* 56 Kan. 31, 42 Pac. 359; *The State v. Smith,* 78 Kan. 179, 183, 96 Pac. 39.)

This instruction related to a vital point in the case, viz., the question of malice, and its effect must be considered in connection with certain evidence offered by the appellant and excluded by the court. The appellant, after testifying to insulting and abusive language and conduct of the appellee while he (the appellant) was at work on top of the separator, upon which were lying screw drivers, a monkey wrench or two, cylinder wrenches, etc., said:

"When I got up there this time Eckerd was right at my heels, trying to get hold of me. I think that is when he called me a . . . (repeating a vile epithet). I recollect of throwing the wrench at the plaintiff. At that time he made some remark about a Winchester, you have n't got it, or something like that, and was crowding me on the separator. He had his hand in his right pocket. He said something about you needing your gun. I threw the wrench immediately after that. I was about four feet from Mr. Eckerd when I threw the wrench. . . . No time intervened from the time I reached for the wrench until I threw it at Eckerd. I told him as much as a half dozen times to go away and let me alone. I threw the wrench at Mr. Eckerd to defend myself."

After the witness had given further details, the following questions were asked, but objections thereto were sustained:

"Ques. Did you know what kind of a tool you were going to get?

"Q. Now, at the time you reached for the wrench, or reached for something to throw, did you know what you were going to get, was going to take in your hand?

"Q. Did you see what kind of a tool you were going to select, the kind of a weapon you were going to select and throw at Eckerd, before you threw it?"

In immediate connection with these questions, the appellant testified, in answer to other questions, that the appellee threw his hand around in his pocket, and he (the appellant) grabbed the wrench and threw it, and that he did this as "quick as thought."

The appellant had the right to have his theory—that he acted in self-defense—presented to the jury, with all proper evidence tending to support it, and no good reason appears for sustaining the objections to the questions asked. It is argued that it was the province of the jury to find the appellant's state of mind. It is true that the jury must determine the fact, but this does not preclude the testimony. While the circumstances attending the act of a party are competent evidence of the condition or state of his mind in doing it, his own testimony as to his motive, purpose and intent is also competent. (*Bice v. Rogers,* 52 Kan. 207, 34 Pac. 796; *The State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *The State v. Hetrick,* 84 Kan. 157, 113 Pac. 383; *Fenwick v. State,* 63 Md. 239; 1 Wig. Ev. § 581.) The exclusion of the testimony was more prejudicial in this instance because the instruction last quoted informed the jury that malice will be inferred from the use of a deadly weapon. The wrench was one among other tools right at hand, and whether the appellant knowingly or intentionally selected it from the others was a material matter bearing upon the question of malice. It will be observed that both the instruction and the testimony excluded related to the crucial point in the case. The instruction alone, or the exclusion of the testimony alone, might not have been materially prejudicial, but considered together such prejudice appears.

Another serious question arises upon the findings concerning damages. One thousand dollars was allowed for actual damages, $1000 for pain and suffer-

Eckerd v. Weve.

ing, $2700 for permanent injury, and $300 for medical expenses and hospital fees. The court struck out the last-named item, and reduced the item of actual damages to $100, and rendered judgment for $3800. As all the damages found were actual damages, and no exemplary damages were allowed, it is impossible to harmonize the findings. In the instructions the jury were informed that pain and suffering in consequence of personal injuries, loss of time occasioned thereby, the reasonable cost of medical and surgical treatment, and permanent loss or damage arising from disability resulting from the injuries, might be considered in estimating damages; and that such damages were compensatory, and that in addition to "actual or compensatory" damages a further allowance might be made for exemplary or punitive damages, in which case they might take into consideration the reasonable and proper expenses to the plaintiff in conducting the suit. It is said by counsel that the $100 for which judgment was rendered upon the item of "actual" damages, after striking out $900 from such item, was for expenses for attorney's fees in conducting the suit, but the instructions did not authorize such recovery unless exemplary damages were allowed, and the jury had found against such allowance.

Following the opinion in *Francis v. Brock,* 80 Kan. 100, 102 Pac. 472, where a like question was considered, it is held that it was error to render judgment upon the findings; and because of this error, and the exclusion of testimony in connection with the instruction referred to, the judgment is reversed, with directions to grant a new trial.