No. 23,716

LEE BROWN, a Minor, by His Mother, MEDAH BROWN, as Next Friend, *Appellant*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. LICENSEE—*On Railroad Right of Way—Assaulted by Railroad Employee— Employee Not Acting Within Scope of His Employment*. Plaintiff, a boy sixteen years of age, was on defendant's right of way at the invitation of and for the purpose of running an errand for the switch tender when the section foreman called him vile names. At some remark of plaintiff's in reply the foreman became angry, ran after plaintiff, caught him, tried to choke him and struck him with a broom handle. The switch tender interfered and the section foreman returned to his hand car. Plaintiff said he was going home and started to leave when the foreman got off his car, chased the plaintiff through the right of way fence into a field, through a barbed-wire fence a half block away, caught up with him and assaulted him again. In an action to recover damages from the railroad company, *held*, that plaintiff was not a trespasser on the right of way but was a licensee, and on the facts stated, *held further*, that a demurrer was properly sustained to plaintiff's evidence because it is obvious that a candid mind acting normally could not reasonably infer that the foreman in making the assault and in following up the plaintiff for a half block after he had left the right of way and again assaulting him, supposed he was engaged in an attempt to discharge any duties devolving upon him, or reasonably infer that he was in fact acting within the scope of his employment. (*Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, and cases cited in that opinion.)

2. SAME—*Pleadings—Allegations of Employment and Agency—Partial Denial Under Oath—Pleadings Interpreted.* The petition alleged that one Larson, whose first name was unknown, the section foreman and an agent and employee of defendant in charge of its tracks and right of way, ordered plaintiff to leave the right of way and struck and beat him and that while plaintiff was leaving the place and tracks the said Larson "acting as the agent, servant and employee of the defendant" followed after plaintiff, again wilfully, wantonly, maliciously, wrongfully and violently struck, cursed, abused and beat plaintiff, etc. The part of the answer, verified under section 110, civil code, denied that defendant "had in its service at the . . . place mentioned . . . any man named Larson, employed as section foreman, agent, servant or employee." *Held,* a negative pregnant implying an affirmative statement that defendant did have in its employ a section foreman at the time and place mentioned who was in charge of defendant's tracks and right of way, but *held further,* that it cannot be taken as an affirmative implication that the section foreman, while following up and assaulting plaintiff, was acting within the scope of his employment as such agent.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed May 6, 1922. Affirmed.

*J. H. Brady, T. F. Railsback, William H. McHale, jr.,* all of Kansas City, for the appellant.

*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appeal is from a judgment sustaining a demurrer to plaintiff's evidence. The petition alleged that the plaintiff, who was 16 years of age was assaulted by a section foreman by the name of Larson, an agent and employee of defendant in charge of its tracks and right of way near Twenty-second street in Kansas City; that the section foreman ordered plaintiff to leave the right of way and struck, cursed and abused him because he did not immediately comply, and when he started to leave, followed and assaulted him a second time.

The answer consisted of a general denial, a defense that plaintiff was a trespasser and that only such force as was reasonably necessary to put him off the right of way was used. As a further defense it was denied under oath that defendant had in its service at the time mentioned any man named Larson, employed as a section foreman, agent, servant or employee.

Plaintiff testified that he lived with his parents a short distance from where the assault occurred; that Johnson, the switch tender,

called him to come over there to do an errand for him; he had often run errands for the employees of the defendant. On this occasion he was standing near the switch shanty when a section crew came up on a hand car under Larson, the foreman. He had known Larson about two years and had seen him giving orders about the repair work. Larson engaged in a conversation with the switch tender, but spoke of the plaintiff, calling him vile and unspeakable names. Plaintiff replied, "I am no more of those names than you are. You don't look any better than the rest of them along here." This caused the foreman to "fly up in the air," and plaintiff ran away; the foreman followed him, caught him and tried to choke him. Plaintiff ran and picked up a broom handle and tried to strike the foreman with it, but the latter took it and hit him across the back and shoulder. Plaintiff ran to where the switch tender was, who said, "You will have to quit fighting as long as I am tending switches here." Plaintiff then said he was going home to put on another shirt as the one he had was torn, and started to walk along the tracks when the foreman came toward him, and plaintiff ran through the right of way fence into a field, then turned east to Twenty-second street where he had to go through a barbed-wire fence, and the foreman caught up with him about 25 feet north of the defendant's tracks and beat him severely. Plaintiff finally broke loose and started home. The foreman went back to the right of way, got a piece of iron about a foot long and threw it at the plaintiff. In his cross-examination plaintiff testified:

"Q. Did you say anything to this man Larson [the foreman] except what you told us now? A. No, sir.

"Q. Before he started to choke you had you refused to get off the track? A. No, sir; he never even ordered me to get off the track.

"Q. He just started in without saying anything? A. Yes, sir."

The theory of the defense is predicated upon a number of decisions in somewhat similar cases. The rule is stated in *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621:

"An employer may be held liable for the wrongful acts of his employee done in the scope of his employment. . . . If done solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable." (Syl. ¶ 2.)

In that case the trial court overruled a demurrer to the evidence which presented the question whether upon the facts the railroad company was liable for the wrongful act of its brakeman in firing a shot which killed a trespasser—one of two young men who were

riding from station to station on a freight train without paying fare. They had gotten off at a station about 10 o'clock at night intending to board the train again. As they stood near the train a brakeman got a revolver from the baggage car, started towards them and with an oath ordered them to get "out of there." The young men ran up the bank of the cut in which the train was standing, which was from 10 to 20 feet from the car and about 10 feet high. On reaching the top of the bank one of them shouted "Go to hell." The brakeman said, "What's that?" climbed up the bank, ran after them and fired the fatal shot. The evidence showed that it was the duty of the brakeman to keep trespassers, including those who attempted to ride without paying fare, away from the train and that he had authority to use force if it was necessary. It was held in the opinion that in order to fix liability upon the employer it is not sufficient that the employment afforded the opportunity to do the wrong, or that it was done during the employment, but it must be done in the course or within the scope of the employment.

The opinion distinguishes between acts done by the servant in pursuit of his own ends although done in the time covered by his employment, and those done in pursuance of his duty in the course of his employment, and quotes as follows from 1 Thompson's Commentaries on the Law of Negligence, § 526:

"If the servant step aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities."

Also from Wood's Master & Servant, 2d ed., § 307, as follows:

"The simple test is, whether they were acts *within the scope of his employment;* not whether they were done while prosecuting the master's business; *but, whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him."*

The judgment was reversed with directions to enter judgment for defendant because, as stated in the opinion—

"After careful consideration we are constrained to hold that a candid mind acting normally could not reasonably infer from the facts presented in this record that the brakeman supposed or believed that these men fleeing as they were away from the train just about to start on its way, intended to suddenly turn back and board it. The fact that they were upon an embankment of considerable height and the train in the cut below between forty and fifty feet distant, and that their assailant not only climbed the bank but still pursued and fired while they were in flight, not toward, but away from the train, precludes a person whose mind acting fairly and impartially

from believing that the brakeman was acting within the scope of his employment when he fired the shot." (p. 483.)

Other cases which support the same doctrine and which are reviewed in the case just cited are *Hudson v. M. K. & T. Rly. Co.*, 16 Kan. 470; *Mirick v. Suchy*, 74 Kan. 715, 87 Pac. 1141; *Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386.

The evidence of the plaintiff in this case shows that he was not a trespasser. He was invited on the premises by the switch tender. He had been accustomed to running errands for the employees of the defendant—as is said in the plaintiff's brief, "going to the store for them and getting his mother to fix up lunches for them and they paid him for so doing. On the very day of the assault while he was crossing the tracks on his way home the switch tender called him and sent him on an errand." The plaintiff was not a trespasser on the right of way; he was at least a licensee. The plaintiff's evidence shows that he had not refused to get off the track before the foreman started to choke him. Up to that time the foreman had not even ordered him to get off the track but started to commit the assault without saying anything. Upon the doctrine of the Kemp case, supra, and other decisions cited, the demurrer was rightly sustained for the reason that it is obvious that a candid mind acting normally could not reasonably infer from the facts stated in the plaintiff's testimony that Larson in making the assault and in following up the plaintiff for a half block after he had left the right of way and again assaulting him, supposed or believed that he was engaged in an attempt to discharge any duties devolving upon him, or that the foreman was in fact acting within the scope of his employment while assaulting the plaintiff.

The plaintiff contends that it was error to sustain the demurrer because of the state of the pleadings; it is insisted that the averments of·the petition respecting the authority of the section foreman must, by virtue of section 110, civil code, be taken as true because there was no verified denial of his authority in the answer. The petition alleges:

"One . . . Larson, whose first name is unknown, a section foreman and an agent, servant and employee of the defendant in charge of the defendant's tracks and right of way at the said point, ordered this plaintiff to leave the said building and right of way of the defendant, and struck, etc. While this plaintiff was thus proceeding down the tracks the said Larson, acting as the agent, servant and employee of the defendant, following after this plaintiff again wilfully, wantonly, maliciously, unlawfully, wrongfully

Brown v. Railroad Co.

and violently struck, cursed, beat and abused this plaintiff, striking him with a club and forcibly ejecting him from the premises of the defendant, and inflicting upon him the following injuries, to wit:"

The verified denial is a restricted one and reads:

"For a third and further defense this defendant denies that it had in its service at the time and place mentioned in said petition any man named Larson employed as section foreman, agent, servant or employee."

. The plaintiff contends that this is nothing more than a negative pregnant which implies an affirmative statement that the defendant did have in its employ a section foreman, agent, servant and employee at the time and place mentioned who was in charge of the defendant's tracks and right of way, and that such foreman, whether his name was Larson or not, "acting as the agent, servant and employee of the defendant, . . . again wilfully, wantonly, maliciously, unlawfully, wrongfully and violently struck, beat and abused this plaintiff," etc.

"A negative pregnant involves and admits of an affirmative implication, or at least an implication of some kind favorable to the adverse party." (5 Words & Phrases, 4739.)

It may be conceded that plaintiff's contention is true to the extent that the language of the verified part of the answer must be considered as an admission or affirmation that the person who made the assault was an agent, servant and employee in charge of defendant's tracks and right of way. We do not believe, however, that it can be taken as an affirmative implication that the section foreman, while following up and assaulting plaintiff was acting within the scope of his employment as such agent. It would require the most technical application of formal rules of pleading to give to the verified answer such an interpretation. Besides, the question whether the section foreman in assaulting the plaintiff was acting within the scope of his employment was on the petition itself a question of law; it was still a question of law when the demurrer was interposed to the evidence.

The judgment is affirmed.