No. 30,880.

HUGH KISER, *Appellee*, v. SKELLY OIL COMPANY, *Appellant*.

(18 P. 2d 181.)

Opinion filed January 28, 1933.

*S. C. Bloss, George T. McNeish, Stewart S. Bloss,* all of Winfield, *W. P. Z. German, Alvin F. Molony, Robert M. Turpin* and *George W. Cunningham,* all of Tulsa, Okla., for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages sustained by plaintiff at defendant's filling station when the door slammed shut as he was passing outward across the threshold. The door struck his arm, the glass panel broke, and plaintiff's left wrist and fingers were severely cut and injured.

It appears that plaintiff was a customer who frequently bought oil and gasoline for his automobile from defendant. One of defendant's employees, Dale Nye, was a lively lad of 16 years, who was endowed with a surplus of energy which he expended in frolicsome pleasantry with patrons of the filling station. He would engage in scuffling, pull a customer's necktie, stick a thumb in his ribs, push him about, and practice various sorts of "horseplay."

On the afternoon of December 24, 1930, plaintiff came to the filling station, leaving his automobile either at the gasoline pump outside or parked nearby. Whether he came into the filling station merely to use its toilet facilities or on business was a matter of dispute. The 16-year-old attendant, Dale Nye, got into a friendly scuffle with plaintiff, and as the latter was leaving Nye slammed the door after him with the consequences stated above.

Plaintiff brought this action for damages charging negligence on the part of defendant in employing such a youthful, heedless and irresponsible employee to wait on its customers. He also alleged that the door was defective in various respects—that its glass panel was insufficient in strength, insecurely set in its frame, lacking a screen or guard to keep it from breaking, and that the door lacked any sort of device to keep it from closing in a sudden and violent manner.

Defendant's answer contained a general denial and alleged that the accident occurred while Dale Nye and plaintiff were engaged in a friendly scuffle in the course of which plaintiff struck the glass panel of the door with his fist, thereby causing it to break and causing whatever injuries plaintiff sustained.

Defendant further alleged that plaintiff did not come to the filling station for the purpose of buying supplies for his automobile nor to avail himself of the services offered by defendant, but on a purely private errand wholly disassociated with defendant's business. The answer also alleged that defendant's employee, Dale Nye, was not

authorized to engage in scuffling or frolicking with its customers, and that any such conduct on Nye's part was outside the scope of his employment and a merely private enterprise in no way connected with his attendance at defendant's filling station.

Defendant also pleaded plaintiff's contributory negligence which culminated in his injuries.

The cause was tried before a jury which returned a general verdict for plaintiff and answered special questions as follows:

"1. When Hugh Kiser drove into the Skelly filling station the afternoon of December 24, 1930, where did he first stop and park his car? A. At the pump.

"2. On that trip did plaintiff Kiser obtain and pay for any gasoline or oil? A. Yes.

"3. Do you find any defect or defects in the door or glass at the Skelly filling station mentioned in the evidence? A. Glass of insufficient strength.

"4. Did the Skelly Company fail to exercise due and reasonable care in not having equipped the door with accessories? A. Yes.

"5. If the plaintiff Kiser was injured from broken glass, what caused the glass to break? A. Slamming door.

"6. Did the scuffle cause or directly contribute to the injuries now complained of by the plaintiff Kiser? A. No.

"9. If you find for the plaintiff, state upon what negligent conduct or acts of defendant you base your verdict. A. By maintaining incompetent help and insufficient door equipment."

Defendant's motion to set aside the special findings was overruled. It then filed a motion for a new trial, on various grounds, one of which was that in the course of their deliberations the jurors had agreed to add together the amounts each of them believed plaintiff was entitled to and divide the sum by twelve and that the quotient should be their verdict. The trial court overruled all other grounds urged in the motion for a new trial but sustained it on the ground of the "quotient verdict," and granted a new trial on the single issue of the amount of damages.

Defendant appeals, urging various points on which it seeks to predicate reversible error.

1. Defendant first contends that the undisputed evidence shows that the injury complained of was the accidental, unintentional and unexpected result of a mutual friendly scuffle, for which no right of action existed. While defendant's evidence was mainly to that effect, the testimony in plaintiff's behalf was explicit that the scuffling between plaintiff and defendant's employee had terminated before plaintiff started to leave, and that he had no reason to anticipate that the door would be slammed after him before he had crossed the threshold.

2. It is next urged that plaintiff's contributory negligence should bar his recovery. Defendant had the burden of establishing contributory negligence on the part of plaintiff, and this it sought to maintain on the theory that plaintiff himself had precipitated the scuffle by playfully tipping Nye's cap over his eyes while the lad was reading a magazine. However that may be, since the scuffling had terminated ere the accident happened, there was nothing in that incident which showed contributory negligence; and no contributory negligence is otherwise shown in the record.

3. The next point urged is that Dale Nye was acting for a purpose exclusively his own, wholly outside the scope of his employment, when he slammed the door and thus caused the injuries sustained by plaintiff. Under this assignment defendant persists in its contention that the slamming of the door was but a continuance of the friendly playfulness in which plaintiff and Nye had been engaged. But the accredited evidence was otherwise. Plaintiff testified:

"A. When I came out of the rest room Nye was sitting in a chair to my right; . . . he had a cap on, I took and tipped it over his eyes and asked him how much I owed him.

"Q. Then what did he do? A. I started towards the door; he jumped up and grabbed me and pushed me practically to the doorstep. My hat fell off, I picked up my hat, paid him and started out.

. . . . . . . . . . . . . .

"Q. You say you picked up your hat, then you settled up with them for this gas? A. Yes, sir.

. . . . . . . . . . . . .

"Q. Who opened the door when you started out? A. Dale.

"Q. As you started out the door did you have any notice you were going to be shoved, pushed, assaulted, or anything like that? A. No, none whatever.

"Q. As he opened the door what did you do? A. I started to walk out the door.

. . . . . . . . . . . . . .

"Q. As you started out the door what, if anything, occurred? A. Something hit me—I don't know what it was, whether he shoved me, or whether he slammed the door—it overbalanced me and I kind of turned around to look—I had my hand up—

"Q. Which hand did you have up? A. My left hand; it hit on the glass or some part of the glass—or, whether I hit the glass with my hand or whether I hit the door somewhere—anyway it broke the glass—I don't know just how. I do know it cut my hand from here to here."

There is nothing unusual or outside the scope of a servant's employment for him to open the door for a customer and to close it after the customer has departed. And it is incumbent on the em-

ployer to assure himself that his employees are not only competent to perform the duties with which they are charged but that they will perform whatever acts are incidental thereto with such care and discretion that the employer's customers will not suffer from their negligence.

In *Ellegard v. Nels Ackland,* 43 Minn. 352, where the action was for damages sustained as the result of a fire negligently kindled by defendant's son while engaged in an adjoining field, the court said:

"Where a master authorizes a servant to work for him, the former is liable for injury to another caused by the latter's negligent manner of doing the work, or by some negligent act of his done in the course of and for the purpose of performing the work, even though the master may have forbidden him to be negligent, or to do the negligent act. Authority to the servant to be negligent is not required to make the master liable."

In *Mansfield v. Detective Agency,* 102 Kan. 687, 171 Pac. 625, where defendant was subjected to an action for damages for injuries sustained by the unauthorized aggression of his employee, this well-settled rule of law was thus stated:

"A master or principal is responsible for the tortious acts of his servant or agent where such acts are incidental to and done in furtherance of the business of the master or principal, even if such acts are done willfully or in excess of the authority conferred." (Syl. ¶ 1.)

See, also; 18 R. C. L. 775, 787, 788, 791, 797, 798, 803; 39 C. J. 1265, 1267.

4. Error is next assigned on the refusal of the trial court to submit two special questions submitted by defendant:

"7. What business of the Skelly Oil Company was the attendant Dale Nye furthering or doing in engaging in the scuffle?

"8. What duties was the attendant Dale Nye performing for the Skelly Oil Company when he was scuffling and the accident to the plaintiff occurred?"

These questions were formulated on the assumption that Dale Nye was actually furthering the business of his master and performing some duty for him in scuffling with plaintiff. There was no evidence to warrant such an assumption. Such interrogatories could only tend to divert the jury's attention from the simple and pertinent issues of fact with which they were concerned. Moreover, the jury's special finding that the scuffling had nothing to do with the plaintiff's injury demonstrates that the exclusion of the interrogatories Nos. 7 and 8 was nonprejudicial and immaterial.

5. Defendant's next point relates to the trial court's refusal to set aside special findings, Nos. 3, 4, 6 and 9. We cannot say that

there was a want of evidence to support those findings; and so far as they can be regarded as involving conclusions of law it would seem that defendant's liability for the defective door in the weakness of its paneling and in the want of accessories to prevent its violent slamming falls within the general rule that a business man is under a duty to keep his premises in a condition of safety so that customers who come into them for purposes of trade may do so without hazard of injury. See excerpt from 2 Cooley on Torts, 3d ed., *et seq.*, quoted in *Reese v. Abeles,* 100 Kan. 518, 521, 164 Pac. 1080.

In *McDermott v. Sallaway,* 198 Mass. 517, 21 L. R. A., n. s., 456, defendant operated a meat market and plaintiff was a customer. As plaintiff was waiting to be served, an employee of defendant opened a door behind plaintiff, striking and injuring her. In overruling defendant's exceptions to a judgment for plaintiff, the supreme judicial court held that an employee of a store may be found to be negligent where, after passing out of a door in such close proximity to which a customer is standing that a stop might bring him within its swing, he reënters the room, opening the door without warning, with such force as to injure the customer, who has actually come within its swing.

In *Meecke v. Morguies,* 128 Kan. 423, 278 Pac. 45, where this court had to consider the liability of the owner of premises for damages caused by a falling skylight, this court said:

"The modern tendency is to extend the legal responsibilities attaching to ownership of real property, with or without the owner's fault." (p. 424.)

See, also, *Crow v. Colson,* 123 Kan. 702, 256 Pac. 971.

Appended to the L. R. A. report of *McDermott v. Sallaway,* supra, is an instructive note on the duty of proprietors of business premises in respect to the safety of their patrons and customers. (21 L. R. A., n. s., 456 *et seq.*)

6. Defendant also seeks to predicate error on the trial court's omission to instruct the jury that defendant would not be liable in the absence of evidence tending to show that its employee was acting within the scope of his employment when he slammed the door. We think the instructions given were sufficiently accurate and comprehensive to define the issues, and as defendant did not ask any special instructions on this point the error now urged cannot be sustained. (Civ. Code, § 285, R. S. 60-2909; *Douglass v. Geiler,* 32 Kan.

499, 4 Pac. 1039; *Skaer v. American Nat'l Bank*, 126 Kan. 538, 540, 268 Pac. 801.)

It is finally urged that the trial court should not have limited the new trial granted to a determination of the amount of damages. This practice, however, is expressly sanctioned by our civil code (§ 307, R. S. 60-3004) and is quite familiar to the bench and bar of this state. (*Fontana v. Integrity Mutual Casualty Co.*, 120 Kan. 406, 412-413, 243 Pac. 1035; *Carlgren v. Saindon*, 129 Kan. 475, 480, 283 Pac. 620, and citations.) When the only error committed at the trial of an action for damages inheres exclusively in the irregular quotient verdict returned by the jury, the problem whether a new trial shall be granted on all the issues, or limited to one for the proper ascertainment of plaintiff's damages, is addressed to the trial court's discretion.

A painstaking consideration of the record and defendant's brief discloses nothing approaching reversible error, and the judgment is therefore affirmed.

THIELE, J., not participating.