No. 40,630

CHARLES HARRIS MURRAY, *Appellee*, v. THE MODOC STATE BANK, a Corporation, *Appellant*.

(313 P. 2d 304)

Opinion filed July 3, 1957.

*Daniel R. Hopkins,* of Garden City, argued the cause; *Ray H. Calihan, Logan N. Green* and *Ray H. Calihan, Jr.,* all of Garden City, were with him on the briefs for appellant.

*James W. Wallace,* of Scott City, argued the cause; and *D. B. Lang,* of Scott City, was with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the district court of Scott County, Kansas, overruling the appellant's (defendant's) demurrer to appellee's (plaintiff's) petition.

The petition in substance alleges that one Donald Breithaupt was employed as the cashier and managing officer of the defendant, The Modoc State Bank, a banking corporation at Modoc, Kansas, on January 1, 1952, and was employed continuously in that capacity until on and after March 9, 1954; that plaintiff and Breithaupt had business transactions involving plaintiff and defendant and also involving plaintiff and Breithaupt; that the relationship between plaintiff and Breithaupt was strained and angry; that Breithaupt had threatened bodily harm to the plaintiff; that once when plaintiff had gone to the defendant bank to transact business with defendant, Breithaupt had assaulted him; that the violence and antagonism of Breithaupt grew so great that plaintiff could not in safety go to the defendant bank to transact business but was compelled to do so by mail, all of which facts were known and understood by the defendant; that plaintiff was indebted to the defendant; that on or about the 9th day of March, 1954, plaintiff attempted to transact business with the defendant by mail, particularly the depositing of checks to his personal account; that Breithaupt telephonically requested plaintiff to come to the defendant bank to discuss the transaction with him, but that plaintiff declined to do so; that thereafter and on the 9th day of March, 1954, Breithaupt went to plaintiff's home and demanded to see the plaintiff; that plaintiff went onto the porch of his home to see Breithaupt; that Breithaupt demanded that plaintiff deposit said checks as he, Breithaupt, directed and further demanded that plaintiff execute and deliver to the defendant a prop-

erty statement for the benefit of defendant; that plaintiff declined to forthwith comply with said demand, whereupon Breithaupt jerked plaintiff from the porch, struck him with his fists, threw him to the ground, and fell upon him, inflicting upon the plaintiff the injuries complained of.

The petition then specifically alleges:

"IX.

"That said injuries complained of were caused by and as a direct result of the negligence of the defendant in the following particulars, without which negligence the injuries would not have occurred, to wit:

"1. In permitting the aforementioned Donald Breithaupt to manage and conduct the affairs of said defendant with this plaintiff.

"2. In permitting said Donald Breithaupt to go to the home of this plaintiff to conduct business with this plaintiff on the part of this defendant.

"3. In continuing the aforenamed Donald Breithaupt in its employ after having notice, or when it should have had notice, of his violent, aggressive, and antagonistic disposition toward this plaintiff.

"4. In directing and permitting said Donald Breithaupt to transact business with this plaintiff when it knew, or by the exercise of reasonable care, should have known, that such would reasonably result in an assault on and injury to this plaintiff.

"5. In permitting a person, particularly Donald Breithaupt, to manage the affairs of said defendant when it knew or should have known that such management would result in injuries with those with whom he came in contact, particularly, this plaintiff.

"6. In allowing the managing officer to go to the home of this plaintiff for the purpose of transacting the business of defendant with this plaintiff, when it knew or should have known that such managing officer might inflict personal injury upon this plaintiff.

"X

"That as a result of the acts committed by this defendant, this plaintiff suffered a broken left leg, a comminuted fracture involving the upper left tibia, and a comminuted fracture of the proximal end of the left tibia, one of the fracture lines entering the mid portion of the articular surface of the tibia at the left knee. That such break caused a puncture wound below the tibial tuberosity; that this plaintiff suffered a fracture of the left fibula, all of which necessitated an open reduction of said fractures and breaks, the removal of both menisci, the placement of a tibial bolt across the upper tibia with plates along both sides of the upper tibia, and the alignment and fixation of the fracture fragments by means of wire, metal bolts and two metal plates."

The petition further sets up the various items for which the plaintiff seeks damages and prays judgment for $65,822.00 and costs. Breithaupt was not joined in the action. The petition was filed on March 8, 1956.

The defendant filed a demurrer to the petition of the plaintiff

on the ground that the petition failed to state a cause of action in favor of the plaintiff and against this defendant. After hearing argument the district court overruled the demurrer. The defendant appeals and specifies as error the overruling of defendant's demurrer to the plaintiff's petition.

It will be observed that the cause of action arose on the 9th day of March, 1952, and the petition was filed March 8, 1954, which was one day less than two years.

The first question considered is whether or not the plaintiff's cause of action is outlawed by the statute of limitations (G. S. 1949, 60-306, *Fourth*).

The defendant argues that this is simply a case of assault and battery and that if an action had been brought against the servant, Breithaupt, or if the servant had been joined as a party defendant in this action, the case could have been nothing more than assault and battery. The defendant asks: Can the plaintiff, therefore, enlarge or change the cause of action into something else by suing only the master and alleging only negligence?

Admittedly, if this petition is construed as one charging the defendant with the assault and battery committed by Breithaupt, the managing officer of the bank, the one-year limitation under G. S. 1949, 60-306, *Fourth,* bars recovery by the plaintiff in that the face of the petition discloses the action was filed more than one year after the cause of action arose. However, if the petition is construed as one alleging actionable negligence against the bank, then a two-year limitation under G. S. 1949, 60-306, *Third,* applies and the plaintiff's right to maintain the action is not barred under the statute of limitations.

The defendant argues that the injury of which the plaintiff complains was occasioned and caused by the assault and battery, and his attempt to change the cause of action into a negligence action by alleging the negligence of the defendant in hiring and retaining a cashier and general manager with known violent, quarrelsome and antagonistic tendencies, is an effort to circumvent the statute of limitations.

The defendant relies on two early Kansas cases, *Laurent v. Bernier,* 1 Kan. 428, and *Byrum v. Edwards,* 66 Kan. 96, 71 Pac. 250. In the *Laurent* case this court held that the injuring of the plaintiff by the negligent discharge of a gun was a battery, and the action was barred by the one-year statute of limitations. In the

*Byrum* case this court held that an action against the sheriff and his bondsmen for shooting the plaintiff by the undersheriff was barred, if such cause of action ever existed, within one year after the injuries.

These cases have been carefully analyzed in *Hackenberger v. Travelers Mutual Cas. Co.,* 144 Kan. 607, 62 P. 2d 545, where the court pointed out that the shooting in the *Byrum* case was in fact intentional.

Subsequent to the early decisions in the *Laurent* and *Byrum* cases, this court has concluded that an *intention to injure* is a prerequisite in battery cases. This is clearly disclosed in *Eckerd v. Weve,* 85 Kan. 752, 118 Pac. 870.

This subject has been thoroughly discussed in earlier decisions of this court and the law is now clear that the fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional.* (*Hershey v. Peake,* 115 Kan. 562, 223 Pac. 1113, and *Hackenberger v. Travelers Mutual Cas. Co.,* supra.)

In *McMillen v. Summunduwot Lodge,* 143 Kan. 502, 54 P. 2d 985, this court quoted with approval from 45 C. J. 631, defining actionable negligence as follows:

" 'To constitute actionable negligence there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. . . . In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant. When these elements are brought together, they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient. A judicial definition bringing out with admirable conciseness the elements of actionable negligence is as follows: "Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred." ' " (p. 509.)

It is not a necessary element of negligence that the defendant anticipate the precise injury sustained. (*Atherton v. Goodwin,* 163 Kan. 22, 180 P. 2d 296.)

The Restatement of Law, Torts, § 284, pp. 744, 745, defines "negligent conduct" thus:

"Negligent conduct may be either:

"(*a*) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or

"(*b*) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do."

The defendant cites *Welch v. Shepherd,* 169 Kan. 363, 219 P. 2d 444, and refers to the foregoing quotation:

". . . The facts pleaded are more consonant with a claim of false imprisonment or malicious prosecution, and if so construed, the action would be barred under G. S. 1935, 60-306, *Fourth.* But simply because that might be the result does not mean the petition is to be construed as stating a cause of action on some other theory so that the cause of action is not barred. . . ." (p. 367.)

While in the foregoing case the petition was construed to bar a cause of action, the rule stated is in reality a double-edged sword, and should the petition in the instant case be construed to state a cause of action which is not barred, the fact that a construction on some other theory might avoid such result is impotent as a persuasive reason.

The statute of limitations has been advanced as a sound reason for construing the plaintiff's petition as one which is in substance an assault and battery and thereby barred. It must be remembered that the statutes of limitation affect only the remedy and do not in any other way affect a cause of action. (*Newell v. Harrison Engineering & Const. Corp.,* 149 Kan. 838, 89 P. 2d 869.) It cannot be asserted as a substantive reason to defeat an action otherwise valid. The fact that a statute bars recovery against a debtor does not extinguish the debt. (*Bomud Co. v. Yockey Oil Co.,* 180 Kan. 109, 299 P. 2d 72.) Were the construction of a petition dependent upon an ultimate result which sought to deny the remedy, the practice would be tantamount to prejudging a case or deciding it without valid reason and thus leave the logic of the law floundering at sea.

The statute of limitations has frequently been asserted in cases which are essentially malpractice actions. In such cases various theories have been advanced to defeat a cause of action or to maintain one under the statute. Among them are assault and battery and contract. In *Travis v. Bishoff,* 143 Kan. 283, 54 P. 2d 955, this court said:

"The law of this state is realistic. Substance prevails over form. It is perfectly manifest that, nowithstanding the form given to the petition, the gravamen of the action was malpractice, which is a tort, and the action was barred by the two-year statute of limitations." (p. 285.)

The precise point before this court for decision is a matter of first impression. Simply stated, the question is whether a master may be held liable for injuries to a third person proximately resulting from the incompetence or unfitness of his servant, where the master was negligent in selecting or retaining an incompetent or unfit servant.

The question here presented is not without difficulty. Other jurisdictions have split on this point. The defendant relies on *Trimming v. Howard*, 52 Ida. 412, 16 P. 2d 661, where the Supreme Court of Idaho said:

". . . The original injury, be it caused by carelessness, negligence, misconduct or whatnot, remains the sole cause of action; and the action is one in tort and not for a breach of contract . . . The appropriate statute of limitations is determined by the substance, not the form, of the action. . . ." (p. 416.)

The defendant recognizes that many cases in other jurisdictions seem to support the view that a master may be liable for the act of a servant because of negligence in the hiring and retaining a known incompetent, minor, or quarrelsome and dangerous person in his employ, but argues that none of those cases involve the statute of limitations.

The defendant relies on a statement of the law cited in 35 Am. Jur., Master and Servant, § 548, pp. 978 and 979. The plaintiff's position, on the contrary, is supported by a statement of the law as it appears in 57 C. J. S., Master and Servant, § 559, pp. 270 and 271.

This opinion could be burdened indefinitely by a review of decisions in other jurisdictions on both sides of the question here presented, all to no avail for the reader. An extensive annotation appears in 34 A. L. R. 2d 372 to 446, incl., in which the various phases of an assault by a servant of the master are treated. The plaintiff relies on two particular sections of the above annotation, *i. e.*, § 7, pp. 384 to 388, incl., pertaining to the duty of an employer to protect his business invitee as against assaults committed upon the latter by an employee, where liability of the employer for such assaults arises out of the contractual relationship; and § 9, pp. 390 to 395, incl., pertaining to negligence in the selection or retention of an employee of vicious propensities. Under this theory, the employer is bound to take notice of the character and propensities of the employee, and is charged with knowledge which he had or

should have had concerning the likelihood that such employee would resort to violence in the discharge of his duties.

The plaintiff presents the argument hereinafter set forth: It is fundamental that the relationship between a patron and a bank is founded on contract. The bank to which the patron goes has an obligation imposed upon it by such contract to use vigilance and care for the protection of the patron invitee. In the instant case the patron received a specific telephonic invitation to visit the bank and refused. Thereafter, the bank, in the guise of its managing officer went to the home of the patron. There, armed with the requisite papers of the bank, he invited the patron onto the porch to transact the bank's business. The patron was as much within the portals of the bank as if he stood before the cashier's window. The invitation of the bank to transact business with a person known to the bank as being a person of mean and angry disposition was not only extended the patron, it was thrust upon him.

The petition filed in the instant case was not attacked by motion. It is thus entitled to a liberal construction most favorable to the pleader. Allegations to the plaintiff's detriment are excluded. The petition does not allege a cause of action under the doctrine of *respondeat superior*. Fairly construed, the petition alleges a cause of action in negligence against the bank and not a tort by its servant or agent. The allegations of the petition meet all the requirements for actionable negligence. (*McMillen v. Summunduwot Lodge*, supra.)

We hold that the doctrine of *respondeat superior* is not involved in the instant case. Construing the pleading most favorably to the petitioner as we must, the issue presented is whether the employer, The Modoc State Bank, was negligent in retaining its managing officer, Breithaupt, who had propensities toward violence. What the evidence will disclose upon trial of the case we are not at liberty to speculate. A line of authorities for this point in other jurisdictions is clearly reviewed in 34 A. L. R. 2d, § 9, *supra*.

Some of the cases in which it was held there was sufficient showing that a master was negligent in keeping his servant in employment are: *Duckworth v. Appostalis*, 208 Fed. 936, where a guest sued to recover for injuries inflicted by an employee known by the master to have made previous assaults on guests; *Crawford v. Exposition Cotton Mills*, 63 Ga. App. 458, 11 S. E. 2d 234, where a customer of a store sued to recover for injuries by a servant known by

the master to have an unusual and abnormal high temper; *Priest v. Woolworth Five and Ten Cent Store,* 228 Mo. App. 23, 62 S. W. 2d 926, where a customer sought recovery for injuries inflicted by a servant while he was engaged in an act of horseplay and who was known by the manager to have been guilty of previous acts; and *Hall v. Smathers,* 240 N. Y. 486, 148 N. E. 654, where a tenant of an apartment house sought to recover as against the master for injuries by a servant known by the master to be a drunkard and incompetent and dangerous.

The following jurisdictions have expressly or impliedly indicated that an employer may be primarily liable for a personal assault by an employee upon a customer, patron, or other invitee, if he has failed to exercise due care to avoid the selection or retention of employees who will assault such invitees: California, Dakota, Georgia, Kentucky, Massachusetts, Michigan, Missouri, Mississippi, Nebraska, New York, Ohio, Pennsylvania, Washington, and several federal districts.

Of more importance is the consideration heretofore given by this court to cases somewhat similar. In the case of *Roebuck v. Railway Co.,* 99 Kan. 544, 162 Pac. 1153, a full discussion of Kansas cases as they appeared in the official reports at that time was undertaken. It is most helpful in presenting the issue. Porter, J., speaking for the court in 1917, recognized the specific question which we now have and cited a Texas case on the point, *Missouri, K. & T. Ry. Co. of Texas v. Day,* 104 Tex. 237. He pointed out that the *Roebuck* case was distinguishable from the Texas case for the reason that it was brought pursuant to the federal employers' liability act and was not a common law action of negligence, but a case under the law of Master and Servant.

In the *Roebuck* case an employee, Negreta, assaulted a fellow employee, Roebuck, killing him. The victim had knowledge of the dangerous disposition of the actor and requested the employer to discharge him, but the employer reassured the victim that he would be protected, and notwithstanding such knowledge continued Negreta in its employ. The petition charged the employer with negligence in that it did not furnish Roebuck a safe place to work by retaining Negreta in its employ in the gang which Roebuck was employed to boss. The court held that the act must come within the scope of employment to permit recovery. The facts in the *Day* case (Texas case cited) are that a foreman and his straw

boss were simultaneously giving orders which were conflicting. A workman assaulted the straw boss. The Texas court charging the master with actionable negligence held the master liable to the injured fellow servant without determining the scope of employment.

This court in the *Roebuck* case said at pages 553 and 554:

"If this were a common-law action, wholly independent of the federal employers' liability act, the case decided by the Texas court would be very much in point as to the facts. We should then have squarely before us the question whether the express notice given to defendant by plaintiff's intestate touching the reputation of Negreta as a turbulent, vicious and dangerous person; the fear Roebuck expressed to defendant that Negreta, if retained as a workman under him, would seek a quarrel and do the very thing it subsequently turned out Negreta did; the refusal of the defendant, when notified of Negreta's dangerous proclivities, to discharge him or find employment for him elsewhere; whether or not all these facts and circumstances are sufficient to entitle plaintiff to recover.

/ "Plaintiff's intestate, however, was an employee, and the action is brought against the employer to recover for death alleged to have been caused by the employer's negligence; and *since it is brought under the federal employers' liability act, it can be maintained only upon the ground that the negligence consisted of the employer's failure to perform some duty or obligation owing to the employee under the law which applies to master and servant; not necessarily as this court would determine that question in a common-law action here, but as the federal courts would determine it . . .*" (Emphasis added.)

The reader is referred to the *Roebuck* case for its enlightening discussion as supplemental hereto.

Other cases have been presented to this court in which the plaintiff alleged negligence on the part of the master in keeping a servant in his employ. In *Zamora v. Wilson & Co.,* 129 Kan. 285, 282 Pac. 719, the widow of a deceased employee of the defendant sought to recover damages for the death of her husband caused *by the tortious act of another employee* of the defendant in using a meat cleaver. It was alleged that the assailant was a dangerous, turbulent and bloodthirsty man given to commencing quarrels and brutally assaulting other persons and the employees of the defendant while in and upon defendant's premises, and had assaulted and dangerously injured plaintiff's deceased on another occasion, all of which facts were known to the defendant. With very little discussion in the opinion the court held pursuant to *Roebuck v. Railway Co.,* supra, that the petition failed to state a cause of action on the ground that the master was not liable for the *tortious act of one employee against a fellow employee where the act was not done in the*

*promotion of the master's business or as a part of the employee's duties.*

Similarly, in the case of *Gabbard v. Sharp,* 167 Kan. 354, 205 P. 2d 960, a woman plaintiff employed as a waitress in a restaurant, was assaulted by a fellow male employee who was alleged to be in an intoxicated condition and enraged as a result of his thwarted advances toward her, all of which was known to the defendant employer. Plaintiff further alleged that the defendant knew of her assailant's disposition toward this plaintiff and other women and his habits in and about the premises in an intoxicated condition during the hours that plaintiff worked. Recovery was sought on the ground that the defendant was negligent in his omission to perform a duty toward this plaintiff which caused and contributed toward her injuries. This court held that the petition failed to state a cause of action, following *Zamora v. Wilson & Co.,* supra. The reason advanced in the *Gabbard* case was that the assault was committed at a time when the employee had stepped beyond the scope of his employment and was engaged in a personal venture of his own. It may be added that a fair presentation was not there made to this court on the part of the plaintiff. The court at page 356 said:

"Before proceeding to give consideration to the merits of this appeal we feel compelled, because of the state of the record, to comment that if appellee has any confidence in the propriety of the ruling on the involved demurrer there has been no indication of that fact. She filed no brief and made no appearance when the cause was argued. On that account our decision must be reached without any information as to the theory on which the trial court concluded the amended petition stated a cause of action or any citations of authorities supporting its decision."

THIELE, J., speaking for the court in *Balin v. Lysle Rishel Post No. 68,* 177 Kan. 520, 280 P. 2d 623, used language which appears on the surface to be directly in point, though not necessary to a decision in the case. There, a bellboy employed by the defendant shot and injured the plaintiff who was alleged to be a guest of the defendant hotel. The plaintiff was also a bellboy who roomed at the hotel and paid for his room. He was in the hotel but not working at the time of the assault. The third cause of action was alleged on the theory that the hotel, a corporation, was negligent under the circumstances in keeping the assailant as an employee. The case proceeded to trial on this cause of action. A demurrer was sustained to the evidence by the lower court and affirmed on appeal to this court on the ground that there was no evidence that

the previous course of conduct of the assailant prior to the assault was known to the defendant. The fourth syllabus in the opinion reads:

"A master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant where the master was negligent in employing the servant or in retaining him in employment when the master knew or should have known of such incompetence or unfitness of the servant."

In the opinion of the *Balin* case at page 530 it was said:

"If it be assumed, as plaintiff contends, that at the time of the shooting he was not then in the relation of servant to the master the corporation, and that the rule is that a master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant, either where he was negligent in employing him or in retaining him when the master knew or should have known of such incompetence or unfitness, and we need not expand on that rule (see 57 C. J. S. 270, 35 Am. Jur. 978), the evidence now under consideration does not show that the master corporation hired an incompetent or unfit servant or employee, or that it retained him in employment after it knew or should have known of his incompetence or unfitness—it does not even show the servant incompetent or unfit. If it be assumed that plaintiff at the time of the shooting was in the employ of the corporation and not a mere third person or guest, the rule as to fellow servants comes into operation. It is too clear to be debated that the act of shooting which caused plaintiff's injuries was not authorized by the master corporation or was not done by its servant and employee Wood to advance its interests, and in such circumstances the rule is that master corporation is not liable in damages to one servant for injuries inflicted on him by the act of his fellow servant. See *Zamora v. Wilson & Co.,* 129 Kan. 285, 282 Pac. 719; *Gabbard v. Sharp,* 167 Kan. 354, 205 P. 2d 960, and cases cited."

See, also, the case of *Kiser v. Skelly Oil Co.,* 136 Kan. 812, 18 P. 2d 181, where this court affirmed a judgment in favor of the plaintiff who brought an action for damages charging negligence on the part of the defendant in employing a youthful, heedless and irresponsible employee to wait on customers. Plaintiff also charged that the door of a filling station was defective in various respects. The case was tried to a jury and the jury found that the employer was negligent "By maintaining incompetent help and insufficient door equipment," where a door was slammed by an employee against a customer at a filling station and the glass broke injuring the customer.

Other Kansas cases in which the master was sought to be held liable for the acts of the servant in which the negligence of the employer was not pleaded, argued or urged, are: *Kastrup v. Yel-*

*low Cab and Baggage Co.,* 129 Kan. 398, 282 Pac. 742; *Crelly v. Telephone Co.,* 84 Kan. 19, 113 Pac. 386; and *Brown v. Railroad Co.,* 111 Kan. 338, 207 Pac. 196. These cases hinge on the general proposition that a master is liable for assaults committed by his servant upon a customer, patron, or other invitee where such assault is committed by the servant while acting within the scope of his employment. There is general agreement that where an assault is purely personal to the servant, having no real connection with the master's business, the doctrine of *respondeat superior* is inapplicable to fasten liability on the master. These cases are not applicable here.

A general reading of the cases on this subject makes it clear that an employee who is a quarrelsome and dangerous person is an "unfit" person within the meaning of that term.

In conclusion, we hold that the plaintiff has alleged a cause of action against The Modoc State Bank on the theory of negligence.

The ruling of the trial court in overruling the demurrer to plaintiff's petition should be and hereby is affirmed.

PRICE, J., dissenting: In my opinion the decision of the court confuses form and substance. What plaintiff actually is attempting to do is to recover, under the guise of a negligence action, for an assault and battery. Despite the language in which the petition is couched, the real wrong complained of, and the real basis of his action—is the assault and battery. An action to recover for an assault and battery must be brought within one year (G. S. 1949, 60-306, *Fourth*). This action was brought too late. Defendant's demurrer should have been sustained. For this reason I respectfully dissent.

PARKER, C. J., joins in the foregoing dissent.