MICHAEL K. ALBRIGHT, Plaintiff-Appellant, *v.* RAY PARR *et al.*, Defendants-Appellees.

Fifth District   No. 83—28

Opinion filed July 31, 1984.

Paul Thomas Austin & Associates, of Marion, for appellant.

William Kent Brandon, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee Ray Parr.

James B. Bleyer, of Marion, for appellee Smoot Oil Company.

Bryan P. McGary, of Mitchell & Armstrong, of Marion, for appellee Shell Oil Company.

JUSTICE HARRISON delivered the opinion of the court:

Michael Albright, plaintiff, appeals from summary judgments entered in the circuit court of Johnson County in favor of Ray Parr, Shell Oil Company, and Smoot Oil Company, Inc., on plaintiff's third amended complaint. Plaintiff does not appeal from the entry of summary judgment in favor of an additional defendant, Chuck Keller, d/b/a Keller Oil. For the reasons which follow, we affirm in part, reverse in part and remand.

Plaintiff's third amended complaint alleged that defendant Smoot

Oil Company was the owner of certain land in Johnson County, that defendant Parr leased this land and operated a service station upon it, and that Shell Oil Company distributed its products through Smoot and Parr. It was further alleged that on July 17, 1980, plaintiff, while rising from a chair in the waiting area of the station, fell through a plate glass window and was injured, and that these injuries were caused by negligence on the part of the defendants, in that they (1) failed to provide a safe waiting area for customers; (2) placed the chair on which plaintiff sat in an area not large enough to hold the chair; (3) failed to warn plaintiff of the unsafe condition of the waiting area; (4) used a glass window on the premises which was unsafe in that it was constructed of single plate glass capable of shattering into fragments, and of insufficient strength for the purposes for which it was installed; (5) used a plate glass window without subjecting it to polariscopic examination in attempt to ascertain defects in the glass; (6) permitted chairs to be set against the plate glass window; (7) permitted use of chairs which were not safely constructed; and (8) failed to protect plaintiff from assault by a patron known to be "rowdy and making threatening gestures toward others."

During the discovery deposition of plaintiff, plaintiff testified, in essence, that Allen James, apparently not an employee of any of the defendants, caused the fall in question by pushing plaintiff:

"Q. You didn't feel any contact between you and Allen James?

A. He could have, yes.

Q. Where would the contact have been?

A. It would be right in here.

Q. You are pointing to the left side of your chest?

A. Yes.

Q. About where your pocket is right now, right?

A. Yes.

Q. Could you tell whether he had an open hand or a closed hand?

A. I would say it would have probably been open.

Q. He had never struck you before with a closed fist had he?

A. No sir.

Q. So as best you could tell it was an open hand?

A. Yes sir.

Q. How would you describe the force of that contact between his open hand and your left chest?

A. Well we were pretty close. See it was close you know.

Q. You made a gesture, just kind of a push type gesture?

A. Yes.

Q. Is that the way he did it?

A. Yes sir.

Q. Did he push you forcefully enough to move your body backwards?

A. Yes sir.

Q. To propel you backwards?

A. Yes sir.

Q. And when he did that did you hit some part of the chair?

A. I landed in the chair.

Q. You landed in the chair. So you were half way up as you described and the hand pushed you in the left chest and you went back into the chair, is that what happened?

A. Yes sir. And right on through the window.

Q. And then you just went on back through the window?

A. Yes.

Q. Did you go on out of the chair when he pushed you backwards?

A. I was still in the chair when it hit the floor.

Q. When you went through the window you were still in the chair?

A. Still in the chair.

Q. And did his push cause you to lose your balance?

A. I would say so.

\* \* \*

Q. Now if I understand your answers to the questions on [*sic*] Mr. Brandon, the chair itself did not give way or have anything to do with the actual accident in and of itself? In other words the chair didn't fail in any way did it?

A. It didn't collapse, no.

\* \* \*

Q. Actually what caused you to fall was when Allen James pushed you, is that correct?

A. Yes.

Q. And you didn't fall off the ledge or you didn't tip off the ledge, you were getting up in a normal manner and would have gotten up as far as you know had he not pushed you back through the glass, is that correct?

A. That's about the way it goes.

Q. That is correct isn't it?

A. Yes."

After defendants filed motions for summary judgment, plaintiff

filed an affidavit in which he stated that Allen James swung at plaintiff as if to hit him "and may or may not have made actual physical contact with plaintiff" and that plaintiff then fell backwards due to "the narrow ledge the chair was sitting on, the wobbly chair and being startled or pushed by Allen D. James'.actions." The court subsequently granted the motions for summary judgment.

■ In analyzing plaintiff's contentions that summary judgment in favor of defendants Parr, Shell and Smoot should not have been granted, we note initially our agreement with defendants' assertions that plaintiff's admissions in his deposition conclusively establish that neither the condition of the chair itself nor the existence of the ledge in any way contributed to the occurrence of the accident. When admissions in pre-trial depositions are deliberate, detailed and unequivocal, they will conclusively bind the party-deponent (*Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 11, 170 N.E.2d 393), and we are compelled to conclude that plaintiff's admissions, as quoted above, unequivocally establish that neither the condition of the chair itself nor the fact of the existence of the ledge caused or contributed to his injuries. Moreover, plaintiff's subsequent affidavit did not operate to return to disputed status the facts removed from contention by plaintiff's admissions. *Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 935, 332 N.E.2d 32.

■ Notwithstanding these admissions on the part of plaintiff, we believe that the court erred in granting summary judgment for defendants. While it appears from plaintiff's deposition testimony that a push from Allen James caused him initially to fall, it does not follow, however, that plaintiff's admissions operated to remove from issue those allegations of negligence concerned with defendants' use of and failure to inspect the plate glass window through which plaintiff fell, or those allegations regarding placement of the chair near the window. Although James' push was certainly a proximate cause of plaintiff's injury, it may not have been the only such cause:

> "What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. [Citations.] An intervening efficient cause is a new and independent force which breaks the causal connection between the

original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. [Citations.] What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. [Citation.]" *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380-81, 50 N.E.2d 497.

It is axiomatic that there may be more than one proximate cause of an injury (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 17, 413 N.E.2d 1242), and we cannot say as a matter of law that such is not the case here. Given the public nature of defendants' business and the proximity of the waiting chair to the glass, the trier of fact might well be justified in concluding that the use of single plate glass, or the placing of the chair near that glass, was the type of action which the ordinarily prudent person ought to have foreseen would cause injury. (Compare *Kiser v. Skelly Oil Co.* (1933), 136 Kan. 812, 18 P.2d 181 (affirming verdict for plaintiff partially based on insufficient tensile strength of glass in filling station door slammed on plaintiff).) While defendants may not have specifically foreseen that Allen James would push plaintiff, it is not incumbent on plaintiff to establish that defendants should have foreseen precisely what would occur as a consequence of their allegedly negligent actions or omissions; it is enough that the intervening cause of the injury " '*** is of such nature as could reasonably have been anticipated.' " (*Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 271, 417 N.E.2d 148.) Whether defendants' actions were a proximate cause of plaintiff's injuries is a question for the trier of fact (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 394-95, 356 N.E.2d 93), and plaintiff's admissions did not operate to remove from issue the questions regarding the adequacy of the glass and the placement of the chair near it.

■■ ■ In an additional argument in support of affirmance of the summary judgment in its favor, Shell Oil Company asserts that the record establishes no basis on which to hold it liable for the actions of the other defendants. We agree. The record discloses that Shell does not own, lease or operate the Ray Parr service station, has never entered into a contractual relationship with the Ray Parr station, and merely sells petroleum products to Smoot Oil Company pursuant to an agreement between Shell and Smoot. While Illinois courts have not addressed the precise question presented by these facts, it has been held in at least one other State that an oil company "does not confer

apparent authority, subjecting itself to vicarious liability for negligence, upon a retail service station by allowing the use of its trade name and selling its products to the station." (*Sydenham v. Santiago* (Fla. App. 1981), 392 So. 2d 357.) We deem it appropriate to follow *Sydenham* here, as apparent agency was neither pleaded nor argued on appeal, the record establishes that Shell had no actual control over operation of the station, and there is nothing to suggest that plaintiff came to the station in reliance on or in response to any actions on the part of Shell. See *Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 118-19, 222 N.E.2d 561.

For the foregoing reasons, the summary judgment entered by the circuit court of Johnson County in favor of Shell Oil Company is affirmed. The summary judgments entered in favor of Ray Parr and Smoot Oil Company, Inc., are reversed, and this cause is remanded for further proceedings not inconsistent herewith.

Affirmed in part, reversed in part and remanded.

KARNS and KASSERMAN, JJ., concur.