No. 39,615

ALFRED BALIN, JR., *Appellant*, v. LYSLE RISHEL POST No. 68 AMERICAN LEGION, HUTCHINSON, KANSAS, a Corporation, *Appellee.*

(280 P. 2d 623)

Opinion filed March 5, 1955.

*Ralph J. Thorne*, of Hutchinson, argued the cause, and *Charles E. Rauh, F. Duane Roberts*, and *Bryan Woodson*, all of Hutchinson, were with him on the brief for the appellant.

*D. C. Martindell* and *R. J. Gilliland*, both of Hutchinson, argued the cause, and *W. D. P. Carey, Wesley E. Brown, Edw. B. Brabets, John F. Hayes, C.*

William Miller, Robert C. Martindell, and Jack C. Stewart, all of Hutchinson, were with them on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action in which the plaintiff sought to recover damages, sustained as the result of negligent use of firearms, from Lysle Rishel Post No. 68, American Legion, a corporation, and its employee Edd Wood, Jr. Hereafter the parties are referred to as the plaintiff, the corporation and as Wood.

The issues were formed by plaintiff's amended petition, which stated three causes of action, and the answer of the corporation.

At the trial the motion of the corporation for judgment on the plaintiff's opening statement was sustained as to the first and second causes of action, and at the close of plaintiff's evidence on the third cause of action the demurrer of the corporation thereto, on the ground no cause of action was proved, was sustained. The trial proceeded as against Wood and judgment was rendered against him and, as far as the record before us shows, he has not appealed. The plaintiff has appealed to this court from the rulings on the motions for judgment and on the demurrer, and his specification of errors covers the questions he states are involved, viz.: 1. Whether the pleadings and opening statement showed sufficient facts to constitute a cause of action on the theory of assault and battery and unlawful trespass upon plaintiff; 2. Whether the pleadings and statement showed sufficient facts to state a cause of action for negligence in the operation of the hotel; and 3. Whether the evidence disclosed a cause of action on the theory the corporation was negligent in the circumstances in keeping Wood as an employee.

The corporation has filed its motion that the scope of the appeal be restricted for the reason the plaintiff has not presented any argument nor cited any authority in his brief in support of the first question stated above. Examination of the brief discloses that plaintiff has not argued the question and it will be considered as abandoned. The remainder of the motion is predicated on an alleged failure of the plaintiff to cause a transcript of the record to be filed with the clerk of the Reno county district court. That matter was explained to our satisfaction upon oral argument of the appeal and the appeal will not be restricted on that account.

## I.

Consideration of the second question whether the pleadings and opening statement showed sufficient facts to state a cause of action for negligence in the operation of the hotel requires a review of the petition and of the plaintiff's opening statement.

In his amended petition, for his first cause of action plaintiff alleged: 1. His status; 2. Status of Wood and that he was a minor, on whom rights of majority were conferred in June, 1953; 3. Status of the corporation; 4. That the corporation was engaged in operating the "American Legion Bisonte Hotel" in Hutchinson; 5. That Wood was in the employ of the corporation as a bellboy; 6. That plaintiff was a paying guest of the hotel by reason of an arrangement between him and the corporation whereby he occupied a room as part of the compensation the corporation paid him for his services as an employee of the hotel; that by reason of the arrangement he became an employee of the hotel and also became a guest when he was not on duty as an employee; 7. That about 10 P.M. on December 5, 1952, plaintiff, who was not then on duty at the hotel but was then a guest, was standing near a fireplace in the lobby of the hotel when Wood, a bellboy and employee, emerged from the checkroom of the hotel with a gun in his hand; that as plaintiff approached, Wood assaulted plaintiff by firing the gun, wounding plaintiff and injuring him in particulars which need not be set forth; 8. That the assault and battery and the unlawful trespass made by Wood upon plaintiff "was a violation and breach of those obligations, duties and responsibilities which the defendants, and each of them, as innkeepers and hotelkeepers owed to their said guest . . . to do nothing to injure or to harm him."

After alleging the items and amounts of his damages plaintiff prayed for recovery.

In his second cause of action plaintiff incorporated by reference, paragraphs 1 to 6 as above noted and alleged further that while he was a guest of the hotel and at a time when he was not on duty as an employee, Wood emerged with a gun in his hand and in such a careless, negligent and unlawful manner that the gun was discharged; that the corporation was responsible for the negligent and unlawful acts of Wood when he was on duty as a bellboy; that the corporation was further negligent in permitting Wood to

carry a gun while on duty; that for a long time prior to December 5, 1952, Wood, with the knowledge, acquiescence and approval of the corporation, kept and repaired guns in and around the hotel and it should have known that was dangerous to the guests and persons in the hotel. Other allegations pertain to the injuries sustained by the plaintiff. After alleging that plaintiff's injuries were the direct and proximate result of the negligent acts of the defendants, plaintiff prayed for the same damages as in his first cause of action.

In his third cause of action plaintiff incorporated by reference paragraphs 1 to 6 of his first cause of action, and alleged that in addition to its obligation, duties and responsibilities to its guests, the corporation was further negligent by reason of its failure to exercise reasonable or proper care in its selection and employment of its servant Wood; that the corporation should have known that Wood had a propensity for and on many occasions shot toy guns and pistols for the purpose of frightening guests of the hotel; that the corporation knew that Wood, while an employee and on duty had maintained a number of firearms and guns in the premises and had engaged in the repairing, oiling and polishing said firearms and guns; that although the corporation knew of the irresponsible character of Wood it continued to maintain him as an employee and even after he had shot plaintiff, he continued in employment as a bellboy. In his prayer plaintiff sought the same recovery as in his first cause of action.

In view of the manner in which the contention arises we note that in the corporation's answer it alleged its version of the entire matter and denied all allegations charging it with negligence. If the plaintiff filed any reply denying new matter in the answer, as required by G. S. 1949. 60-717, that reply is not included in the abstract.

At the trial plaintiff by his counsel made an extended opening statement during the course of which it was stated that plaintiff commenced work as a bellboy at the hotel in 1950; that he was then registered as a guest and paid for his room; that later he checked out as a guest but remained in the room and in payment did extra work and on occasions and quite regularly served as night clerk; that during the time he was employed Wood was employed as a bellboy; that plaintiff and Wood were friends of long standing; that after he was employed Wood began bringing

guns to the hotel; that the manager of the hotel had Wood clean a Spanish revolver in the checkroom of the hotel; that Wood would carry a rifle into the hotel and use it outside the hotel firing at pigeons; that the manager knew of this and warned Wood he should not have guns around the hotel; that the evidence would show that Wood left guns in the checkroom of the hotel and this was permitted by the manager during the time preceding December, 1952. It was further stated that after Wood was employed he got in some difficulty in Arkansas, was sentenced to a boys' industrial school, was later paroled to the manager of the hotel and returned to the hotel as a bellboy. The statement contained nothing as to the nature of the difficulty mentioned. It was further stated that plaintiff gave Wood a .22 revolver as a birthday present which Wood kept at his room outside the hotel, but on occasions Wood had it in the checkroom of the hotel where it could have been seen by the manager; that Wood liked guns, used them in hunting; that the revolver had eight places to put bullets and Wood would fill six places and leave two vacant and it was his plan to set the firing pin on a bullet, the next two places would be vacant and he could click the revolver a couple of times and it would not fire; that on the day before December 5, 1952, Wood and a friend went hunting with some shotguns and the revolver which Wood got from his home. On their return the other guns were removed from their car but the revolver was not. Later Wood realized the revolver was in the car and on December 5, 1952, he got it and carried it in his pocket and into the hotel where he gave it to plaintiff to hold for him until he could take it away. Plaintiff was on duty at the time and he put the revolver in the checkroom and when he went off duty at 3 P.M. he took the gun to his room and put it in a bureau drawer, and in some manner Wood got the revolver and put it in the checkroom next to the lobby. That evening plaintiff, who was not on duty, and Wood, who was, went to the post office to get the hotel mail. They returned to the hotel and a little later while plaintiff was standing across the lobby from the checkstand, Wood came out of the checkstand with the revolver, pulled the trigger and it fired a bullet which struck plaintiff inflicting injuries which were stated at length but need not be repeated here. Counsel concluded by stating that as a part of his opening statement he wished to incorporate the petition.

The plaintiff opens his argument directing attention to the rule that no judgment shall be entered on an opening statement unless it appears the party making it has admitted facts which necessarily and absolutely preclude recovery under the issues made by the pleadings, and if there is ambiguity in an opening statement, the party making the statement is entitled to the presumption he did not intend to make an admission that would be fatal to his case. The rules contended for are correct. (See, e.g., *Rodgers v. Crum*, 168 Kan. 668, syl. 4 and 5, 215 P. 2d 190, and cases cited in that opinion.)

The gist of plaintiff's further argument is that he had alleged he was a guest of the hotel, that Wood, with the acquiescence of the hotel, had kept and repaired firearms in the hotel, and the corporation should have known that the keeping and repairing of firearms on the premises was highly dangerous to guests in the hotel and our attention is directed to authorities that an innkeeper must exercise ordinary and reasonable care to keep those parts where his guests are invited or expected to go, reasonably safe for their use (citing *Shaubell v. Bennett*, 173 Kan. 774, 252 P. 2d 927) and that he has an obligation to protect his patrons from injury and retain only such employees as are fit and suitable to look after the safety and comfort of his guests and who will not commit acts of violence against them insofar as it is reasonably within his power to do so (citing 28 Am. Jur. 576); that the statutes of this state make it a criminal offense to give a minor a pistol or revolver, or for a minor to have a revolver in his possession (G. S. 1949, 38-701, 702); that a revolver is recognized as a dangerous instrumentality (*Bolin v. Ballinger*, 131 Kan. 685, 293 Pac 472); that it was not necessary the corporation foresee the precise injury that actually occurred in order for it to be responsible for the acts of Wood, then a minor, and our attention is directed to *Rowell v. City of Wichita*, 162 Kan. 294, syl. 3, 4 and 5, 176 P. 2d 590, and there is an inference, rather than a specific argument, that in his opening statement nothing was said to preclude recovery by him against the corporation. Plaintiff's theory was and is that he was a guest of the hotel. While it is true that he alleged he was a guest his further allegation was that he occupied a room as a part of the compensation he received as a bellboy, and his opening statement was that he was furnished the room for his services as a

bellboy and as an occasional but quite regular night clerk. The authorities generally hold that for one to be a guest within the meaning of the rules pertaining to the relation of innkeeper and guest, he must be a transient person who resorts to and is received at the hotel or inn for the purpose of obtaining the accommodations it purports to afford. (43 C. J. S. 1136, 28 Am. Jur. 547) As bearing on the relation between the innkeeper and guest, see *Johnson v. Reynolds,* 3 Kan. 257. His allegations and opening statement negative any such relation between plaintiff and the hotel operated by the corporation, and they show clearly his occupancy of the room was only a part of the compensation paid him as an employee. We are aware that plaintiff pleaded he was an employee while on duty, but was a guest when not on duty, but that allegation was contrary to his statement as to the conditions of his employment, and was a conclusion rather than a statement of fact. In any event an anomalous situation is presented by the contention made. In our opinion the plaintiff's contention cannot be sustained. He was not both guest and employee of the hotel from some time early in 1952 to December 5, 1952, when he was hurt. The allegations of his petition and his opening statement disclosed that plaintiff's relation to the corporation as operator of the hotel was that of employee and employer. His only theory for recovery was that he was a guest, and entitled to recover on that basis. In our opinion the trial court did not err in sustaining the motion of the corporation for judgment on the second cause of action.

## II.

Consideration of the question whether the evidence supported the third cause of action on the theory the corporation was negligent in the circumstances in keeping Wood as an employee requires a review of that evidence. Almost forty pages of the abstract and the counter abstract are devoted to the plaintiff's evidence and we are compelled to summarize it as much as possible. Our summary, however, is made with due regard for the oft-repeated rule that when attacked by demurrer the court must take the evidence as true, consider that favorable to the party adducing it, disregard that which is unfavorable to him and weigh no contradictory part or differences between direct and cross-examination. See the numerous decisions noted in West's Kan. Dig., Trial, No. 156 (2) (3) and Hatcher's Kan. Dig., Trial,

Nos. 150, 151. It may be stated generally the plaintiff's evidence disclosed that plaintiff commenced work at the hotel in September, 1950; that Wood commenced work about December 1, 1950, was discharged January 1, 1951, for shooting firecrackers at a downtown theater; was rehired about March 1, 1951, and worked until about October 1, 1951, when he went to Arkansas. He came back to the hotel about February 15, 1952, and was employed there until December 5, 1952, and later. Within a few months prior to December 5, 1952, and while in the checkroom of the hotel Wood had repaired a Japanese rifle for the manager of the hotel. There was no ammunition for this rifle. He had also had a .38 revolver which would not operate and which had been given to him by the hotel manager. Whether he repaired it at the hotel or whether there was any ammunition for it is not shown. Wood also had two or possibly more .22 caliber rifles, but whether he had more than one there at any time was not shown. On perhaps numerous occasions Wood would take a .22 rifle, go out of the hotel and to the rear and shoot pigeons using cartridges containing pellets and not bullets, and on two occasions he went to a men's rest room and fired out the window at pigeons. Plaintiff testified that he had shot pigeons on two or three occasions. The evidence also disclosed that the guns in the checkroom were where the manager could have seen them; that he knew of the outside shooting of pigeons but there was no evidence he knew of the shooting from the rest rooms. It was further shown that plaintiff had given Wood a .22 revolver some time prior to December 5, 1952; that on December 4th, Wood and another person had gone hunting taking the revolver and other guns from their homes, and upon returning had left all of the guns except the revolver which was allowed to remain in the car they used. On December 5th Wood remembered the fact, got the revolver and had it in his pocket and when he went to the hotel he gave it to the plaintiff who put it on a shelf in the checkroom. The manager told plaintiff to take the revolver to his room. There is some evidence indicating that when he got to his room he brandished the revolver in some mock demonstration directed toward a hotel cleaning woman. He left the gun in his bureau drawer and did not see it again until he was shot. On the evening of that day, plaintiff, who was not then on duty, Wood who was, and another young man engaged in some

"horseplay" around the lobby, using an old hat and acting like gangsters. Later Wood, accompanied by the other two, went to the post office to get the hotel mail, returned to the hotel and some more horseplay occurred. While plaintiff was standing across the lobby from the checkstand looking at some decorations, Wood came out of the checkstand holding the .22 revolver at his side, pointed in the general direction of plaintiff, when the gun was discharged, the bullet fired hitting plaintiff. The revolver had eight chambers, six of them containing shells, one of which had been fired. In his opening statement plaintiff had said Wood got into some difficulty in Arkansas and was later paroled to the manager of the hotel. The abstracts contain no evidence thereon, other than that one witness said he knew Wood was paroled to the manager. Other evidence disclosed that plaintiff and Wood were good friends, and the clear inference is that the discharge of the revolver and the shooting of plaintiff were unintentional.

The plaintiff's argument is summarized. After directing attention to the rule as to how evidence is to be considered when attacked by demurrer, heretofore recognized, to the rule that where minds of reasonable men might differ as to due care the question is for the jury, citing *Walton v. Noel Co.,* 167 Kan. 274, 205 P. 2d 928, and to the review of negligence as a theory for recovery for harms done in *Rowell v. City of Wichita,* supra, and after setting forth some of the evidence above reviewed, plaintiff contends that a reasonable person acting as manager of the hotel would not have permitted the bellboy Wood to use the checkroom as a place to work on firearms; that because the boy was not only permitted to work on firearms, but to shoot at pigeons, the matter created a condition where the bellboy became contemptuous of firearms and their use and made it dangerous for him to be retained as an employee. The plaintiff also argues that it is well recognized that a master is liable for the tortious acts of his servant if he employs or retains in employment a servant personally unfit to bring him in contact with customers, patrons or invitees, and he directs attention to the following cases wherein it was held there was sufficient showing that a master was negligent in keeping his servant in employment, viz.: *Duckworth v. Appostalis,* 208 Fed. 936, where a guest sued to recover for injuries inflicted by an employee known by the master to have made previous assaults on guests; *Crawford v. Exposition Cotton Mills,* 63 Ga. App. 458, 11 S. E. 2nd 234, where a customer of a store sued to recover for injuries by a servant known

by the master to have an unusual and abnormal high temper; *Priest v. Woolworth Five and Ten Cent Store,* 228 Mo. App. 23, 62 S. W. 2nd 926, where a customer sought recovery for injuries inflicted by a servant while he was engaged in an act of horseplay and who was known by the manager to have been guilty of previous acts; and *Hall v. Smathers,* 240 N. Y. 486, 148 N. E. 654, where a tenant of an apartment house sought to recover as against the master for injuries by a servant known by the master to be a drunkard and incompetent and dangerous.

Notwithstanding the gist of the third cause of action is the alleged retention in employment by the corporation of an unfit employee, the plaintiff reiterates his contention that he was not on duty when he was shot; that because he lived at the hotel he had a right to be in the lobby, and he directs attention to *C., N. O. & T. P. R. Co. v. Brown,* 192 Ky. 724, 234 S. W. 455, where it was held that the relation of master and servant did not apply where a railroad employee, who lived in a bunk car furnished by the railroad and while on a personal errand after the day's work was over, was injured when returning by being struck by a train. That case does not involve retention in employment of an unfit employee, and in view of the facts before us the case is not decisive.

A review of the evidence interpreted favorably to the plaintiff shows that the claim of unfitness of Wood to serve as a bellboy must be predicated on the fact he repaired some firearms in the checkroom of the hotel, and that he shot pigeons with a .22 rifle the shells being loaded with pellets and not lead bullets, and that the manager was aware thereof. There was no evidence that Wood had or kept any loaded firearms in the hotel; that he had ammunition there for such firearms as he worked on or had there; and no evidence that he exhibited the guns in any manner. Neither is there any evidence that while at the hotel Wood misconducted himself or even annoyed other employees or any guest. It is true that a short time after he was first employed he was discharged because of shooting firecrackers at a downtown theater and that later he was rehired, but there is no evidence of any other such misbehavior at any earlier or later date. There is a statement in the evidence that he was paroled to the manager for some offense committed in the state of Arkansas, but no showing whatever as to whether the offense was serious or trivial. Notwithstanding the contention that plaintiff was not on duty when the shooting occurred the fact is that whether on duty or not he was about the hotel with Wood,

who was on duty, accompanied Wood when he went to the post office, and returned to the hotel with him. There was "horseplay" by the plaintiff when he took the revolver to his room right after he went off duty during the afternoon, more "horseplay" in which he engaged before the trip was made to the post office, and more "horseplay" after the return, during the course of which plaintiff was injured, but there is no evidence that such a course of conduct had ever been had before that day or that the corporation had any notice of it, if there had been, or that it had any notice of what happened on the day of the shooting until after it occurred.

If it be assumed, as plaintiff contends, that at the time of the shooting he was not then in the relation of servant to the master the corporation, and that the rule is that a master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant, either where he was negligent in employing him or in retaining him when the master knew or should have known of such incompetence or unfitness, and we need not expand on that rule (see 57 C. J. S. 270, 35 Am. Jur. 978), the evidence now under consideration does not show that the master corporation hired an incompetent or unfit servant or employee, or that it retained him in employment after it knew or should have known of his incompetence or unfitness—it does not even show the servant incompetent or unfit. If it be assumed that plaintiff at the time of the shooting was in the employ of the corporation and not a mere third person or guest, the rule as to fellow servants comes into operation. It is too clear to be debated that the act of shooting which caused plaintiff's injuries was not authorized by the master corporation or was not done by its servant and employee Wood to advance its interests, and in such circumstances the rule is that master corporation is not liable in damages to one servant for injuries inflicted on him by the act of his fellow servant. See *Zamora v. Wilson & Co.*, 129 Kan. 285, 282 Pac. 719; *Gabbard v. Sharp*, 167 Kan. 354, 205 P. 2d 960, and cases cited.

Certain arguments pro and con are made concerning liability for acts of negligence, the necessity of anticipating the harms which may occur, and that such must be the natural and probable result of the negligent act, each party quoting from *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590. In view of what has been said before, we need not comment on those arguments.

In our opinion the trial court did not err in its rulings and judgments, which are affirmed.