**Carol BEAM, Plaintiff,**

v.

**CONCORD HOSPITALITY, INC., a corporation d/b/a Village Inn Restaurant, Defendant.**

No. 93–4188–SAC.

United States District Court, D. Kansas.

Feb. 15, 1996.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, J. Patrick Walters, Wichita, KS, for plaintiff.

J. Nick Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS, Jerry L. Pigsley, Lincoln, NE, for defendant.

MEMORANDUM AND ORDER

CROW, District Judge.

On November 15, 1994, the court entered a memorandum and order denying in part and granting in part the defendant's motion for partial summary judgment. *See Beam v. Concord Hospitality, Inc.,* 873 F.Supp. 491 (D.Kan.1994). In that order, the court considered, *inter alia,* the issue of whether Kansas would permit an employee who is injured by a fellow employee to recover from the employer under negligent retention and/or negligent supervision theories. After substantial discussion of the issue, the court stated:

> This discussion demonstrates to the court that the issue of whether Kansas would recognize the tort of negligent retention and/or negligent supervision in this context is not so cut and dried as the parties would have the court believe. On the one hand, the weight of authority would appear to favor the defendant's position. On the other hand, the general language of the Supreme Court's decision in *Kansas State Bank [v. Specialized Transportation Svcs.,* 249 Kan. 348, 819 P.2d 587 (1991) ] could be read as supportive of the plaintiff's position. Moreover, if Kansas were to recognize the tort in this context, the plaintiff has presented a compelling case to embrace such a theory as she is not merely attempting to circumvent the employment at will doctrine.

> Of course, the court could simply attempt to determine the law of Kansas from the available case law. Because the court does not believe the correct interpretation of the law is clear, and because the law of Kansas determines this issue, the court is contemplating certifying this issue to the Supreme Court of Kansas. K.S.A. 60–3201 provides:

> > The Kansas supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a

United States district court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Prior to certifying this issue, the court instructs the parties to address the following issues:

1. Does this case present a proper issue for certification to the Kansas Supreme Court?

2. If the court determines that it is appropriate to certify this issue to the Kansas Supreme Court, how should the court phrase the issue to be certified?

The parties shall file their responses to this order within ten days of the date this order is filed. After considering the parties' responses, the court will enter an appropriate order.

. . . . .

IT IS THEREFORE ORDERED that the defendant's motion for partial summary judgment (Dk. 91) is denied in part and granted in part as set forth in the body of this opinion.

IT IS FURTHER ORDERED that the parties shall respond to this order within ten days of the date this order is filed. At that time the court will determine whether certification is appropriate. If the court determines that certification is not appropriate, the court will reconsider sua sponte the defendant's motion for partial summary judgment insofar as it relates to the plaintiff's claims for negligent retention and/or supervision.

873 F.Supp. at 506–507.

The parties have filed their respective responses to the court's order. The court, after considerable deliberation and consideration of the law of Kansas,[1] concludes that Kansas has not and would not recognize the torts of negligent retention or negligent supervision in the factual context of this case.

In its November 15, 1994 memorandum and order, the court in substantial detail discusses the history of the tort of negligent supervision and cases applying Kansas law. In addition to that history, the court notes that since the court's November 15, 1994, memorandum and order, the Tenth Circuit has issued opinions in two of the district court cases cited in the court's November 15, 1994, opinion. The Tenth Circuit has issued an unpublished opinion affirming the remaining issues in *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499 (D.Kan.1993).[2] *See Anspach v. Sheet Metal Workers' International Assoc. Local,* No. 93–3234, 1995 WL 133385 (10th Cir. March 28, 1995). The Tenth Circuit's opinion does not, however, address the issue presented in *Beam.* The Tenth Circuit has also issued an unpublished opinion affirming Judge Belot's opinion in *Ulrich v. K–Mart Corp.,* 858 F.Supp. 1087 (D.Kan.1994) (applying principles of *Kansas State Bank & Trust Company v. Specialized Transportation Services,* 249 Kan. 348, 819 P.2d 587 (1991) to an employee's negligent retention claims against her employer, but finding insufficient evidence to support her claim). *See Ulrich v. K–Mart Corp.,* No. 94–3267, 1995 WL 703946 (10th Cir. Kan. Nov. 30, 1995). The Tenth Circuit's short opinion in *Ulrich* simply affirmed Judge Belot's opinion "for substantially the reasons stated in the district court's opinion." The court also notes that in *Witt v. Roadway Express,* 880 F.Supp. 1455 (D.Kan.1995), Chief Judge Van Bebber followed Judge O'Connor's opinion in

---

1. Several intervening events, including several complicated criminal matters involving multiple defendants, have precluded the court from deciding this issue more promptly.

2. In its November 15, 1994, memorandum and order the court erroneously indicates that *Anspach* was decided prior to the Supreme Court of

Kansas' decision in *Kansas State Bank & Trust Company v. Specialized Transportation Services,* 249 Kan. 348, 819 P.2d 587 (1991). *Anspach* was decided in 1993, approximately two years after the decision in *Kansas State Bank & Transportation Services* was rendered.

*Anspach,* holding that Kansas does not recognize the tort of negligent supervision where the alleged victim was an employee of the defendant.

The court's determination that Kansas would not recognize the torts of negligent retention or negligent supervision in this context is based in substantial part on the long history of Kansas cases denying employer liability in this context. *See, e.g., Zamora v. Wilson & Co.,* 129 Kan. 285, Syl., 282 P. 719 (1929) ("A master is not liable in damages for the act of his employee in taking the life of a coemployee when the act which caused the injury was not authorized and was not done to promote the master's business, and was not a part of the employee's duties, although the act was committed while both were employed on the master's premises."). In considering whether those cases are anachronisms in light of Kansas' recognition of the tort of negligent supervision, the court believed that the Eighth Circuit's discussion of the evolvement of Kansas law in *Perkins v. Spivey,* 911 F.2d 22 (8th Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991), raised several valid points. Upon further reflection, the court concludes that the Eighth Circuit's construction of the law of Kansas is less persuasive than the court originally deemed it to be.

First, the plaintiff in *Perkins* sought to impose liability against her employer for the physical injuries and the emotional harm accompanied by those injuries which were caused by her supervisor. *See* 911 F.2d at 30. Although apparently not argued in *Perkins,* in the case at bar, the court has concluded the Kansas Workers Compensation Act is the exclusive remedy for an injured worker's physical injuries and for any emotional distress directly related to or stem-

ming from any physical injury. *See Beam,* 873 F.Supp. at 500.[3] Had the exclusive remedy of the Kansas Workers Compensation Act been raised, the Eighth Circuit would presumably not have reached the issue of whether Kansas would recognize the torts of negligent retention or negligent supervision where an employee seeks to impose liability on her employer for the acts of another employee.

Second, and more importantly, the Eighth Circuit's discussion of Kansas law fails to include any citation to the Supreme Court of Kansas' decision in *Balin v. Lysle Rishel Post No. 68,* 177 Kan. 520, 280 P.2d 623 (1955). In *Perkins,* the court of appeals concluded that the Supreme Court of Kansas' decision in *Gabbard v. Sharp,* 167 Kan. 354, 205 P.2d 960 (1949) ("a master is not liable in damages for the acts of his employee in assaulting a co-employee when the acts causing the injuries complained of were not authorized, were not done to promote the master's business, and were not a part of the employee's duties, although the assault was committed while both were employed on the master's premises and notwithstanding the employer had knowledge of vicious characteristics on the part of the fellow servant responsible for its commission."), was a thirty year old decision that no longer represented the law of Kansas as it failed to consider any theory of liability other than *respondeat superior.* Due to changes in the law across time, and because *Gabbard* did not consider the possibility of liability premised on the theory of negligent retention, the Eighth Circuit found *Gabbard* unpersuasive.[4]

Although the Supreme Court of Kansas did not expressly address the possibility of imposing liability under a theory of negligent supervision or retention in *Gabbard,*[5] in *Ba-*

---

3. In this case, Beam claims to have suffered non-physical injuries that are not covered by the Kansas Workers Compensation Act.

4. "The fact that the injured party in *Plains Resources, Inc. [v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984)] was not another employee is irrelevant. The common law doctrine as developed in Kansas focuses on the direct liability of the employer for its negligence in hiring and retaining an unfit employee who harms another person. We find no case in which the identity of the

person harmed is important." *Perkins,* 911 F.2d at 31 n. 9.

5. In *Gabbard,* the Supreme Court of Kansas stated:

The inviolate rule, so far as we have been able to determine, is that notwithstanding the failure of an employer to exercise ordinary care in the employment of his servants, he cannot be held liable, in a case where one servant injures another, if his negligence was merely a condition as opposed to the efficient cause of injury.

*lin* the Supreme Court of Kansas appears to have expressly considered and rejected imposing liability against an employer for the acts of one employee against another employee under a theory of negligent retention. In *Balin,* the plaintiff was employed as a bellboy by the defendant. During the time he was employed by the defendant, the plaintiff was injured when another employee of the defendant wounded him with a gun.[6] The plaintiff argued, *inter alia,* that the defendant was liable under a theory of negligent retention. The Kansas Supreme Court rejected his claim:

> If it be assumed, as plaintiff contends, that at the time of the shooting he was not then in the relation of servant to the master, the corporation, and that the rule is that a master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant, either where he was negligent in employing him or in retaining him when the master knew or should have known of such incompetence or unfitness, and we need not expand on that rule, see 57 C.J.S., Master and Servant, § 559, p. 270, 35 Am.Jur. 978, the evidence now under consideration does not show that the master corporation hired an incompetent or unfit servant or employee, or that it retained him in employment after it knew or should have known of his incompetence or unfitness—it does not even show the servant incompetent or unfit. If it be assumed that plaintiff at the time of the shooting was in the employ of the corporation and not a mere third person or guest, the rule as to fellow servants comes into operation. It is too clear to be debated that the act of shooting which caused plaintiff's injuries was not authorized by the master corporation or was not done by its servant and employee Wood to advance its interests, and in such circumstances the rule is that master corporation is not liable in damages to one servant for injuries inflicted on him

by the act of his fellow servant. *See Zamora v. Wilson & Co.,* 129 Kan. 285, 282 P. 719; *Gabbard v. Sharp,* 167 Kan. 354, 205 P.2d 960, and cases cited.

177 Kan. at 530, 280 P.2d 623.

Based upon this discussion from *Balin,* it appears that the Supreme Court of Kansas recognized a distinction between third parties and employees and concluded that only third parties could seek recovery under a theory of negligent retention. In recognizing that distinction, the Supreme Court of Kansas presumably understood that its past decisions denying injured employees recovery were primarily based upon the legal proposition that an employer is not responsible for its employee's unauthorized acts committed outside the scope of the employee's duties. Although *Balin* was decided over forty years ago, the court is persuaded that Kansas would continue to recognize the distinction between third parties and employees. Based upon the Kansas case law, the courts of this district have generally limited the theory of negligent supervision or negligent retention to instances where the plaintiff is a third party and not an employee. Limiting the theories of negligent retention or negligent supervision to third parties simply reflects the unique nature of the employer-employee relationship. Because the employee-employer relationship is unique in other respects, *see Tuley v. Kansas City Power & Light Co.,* 252 Kan. 205, 843 P.2d 248 (1992) ("The common-law assumption of risk doctrine is restricted to cases involving the employer-employee relationships."); Kansas Workers Compensation Act, the court concludes that Kansas would continue to recognize this distinction. Based upon this analysis, the court also concludes that it is unnecessary to certify this issue to the Kansas Supreme Court. In light of the long history of unwavering precedent denying recovery to employees injured by coworkers in this context, the court believes that such a substantial change in the

---

4 Labatt on Master and Servant, 2d Ed., §§ 1570, 1571. Here, under unequivocal allegations of the petition, the employer's conduct in retaining the offending employee merely created a condition which made the action of Thomas Jeff Sharp possible. The efficient or proximate cause of appellee's injury was his action in stepping aside from his employment and in committing an assault upon appellee. 167 Kan. at 358–359, 205 P.2d 960.

6. The plaintiff disputed whether he was an "employee" at the time he was injured.

law is one most appropriate for the Kansas legislature.

IT IS THEREFORE ORDERED that the court *sua sponte* reconsiders the defendant's motion for partial summary judgment (Dk. 91) on the plaintiff's claims based upon theories of negligent retention and negligent supervision, and grants that motion.