**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2223. HINES v. RAILSERVE, INC.

DILLARD, Judge.

In this civil tort action, Colby Hines sued his employer, Railserve, Inc., alleging that the company is liable for the serious brain injury he suffered when a potato cannon, constructed by several of his co-workers on company premises, exploded during an attempt to fire it. Following discovery, Railserve moved for summary judgment, which the trial court granted. On appeal, Hines argues that the trial court erred in granting summary judgment because genuine issues of fact remain as to whether Railserve is liable under the theories of *respondeat superior*,[1] Section 317 of the Restatement (Second) of Torts, and negligent supervision. For the reasons set

---

[1] *Ellis v. Ingle*, 306 Ga. App. 674, 675 (703 SE2d 104) (2010) (noting that summary adjudication is only proper when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."); *see* OCGA § 9-11-56 (c).

forth *infra*, we agree that the trial court erred in granting summary judgment, and, therefore, reverse.

Viewed in the light most favorable to the nonmovant,[2] the record shows that in September 2010, Hines was employed by Ameritrack, a division of Railserve, and specifically worked as a member of a railroad track installation and maintenance crew that operated out of Ameritrack's facility (the "yard") in El Dorado, Kansas. At around 5:00 p.m. on September 14, 2010, Hines's crew—which included supervisor DeWayne Taylor and several other employees—finished its off-site track work for the day and returned to the yard. And upon their return, DeWayne Taylor, Hines, and several other members of the crew went to the machine shop located near the back of the yard to visit with Tim Taylor, DeWayne's brother and the shop's foreman, and some of the other shop mechanics—all of whom were still on the clock. There, some of the crew members began drinking beer that they had brought with them.

At around 6:15 p.m., Jeff Heisen, the branch manager of the facility, stopped by the shop on his way out and spoke with the group gathered there. And although Heisen noticed that some of the employees were drinking beer, he did not ask anyone to stop drinking or direct those no longer on the clock to leave. However, shortly after

---

[2] *Ellis*, 306 Ga. App. at 675.

leaving, Heisen called Brandon Dawson, another shop foreman who had been socializing with the Taylors and Hines's crew at the time Heisen left, and told him to make sure that all off-duty employees left the yard. But Dawson did not relay this request, and the crew remained on the premises.

Then, sometime around 7:00 p.m., a few of the shop mechanics and maintenance crew retrieved a potato cannon that they had built a few days earlier using Railserve materials (and which had been stored in the shop). After placing the cannon on top of a trailer just outside of the shop, everyone in the group—including Hines—began looking for materials to fire, and the cannon ultimately was packed with gun powder and pieces of metal. DeWayne Taylor then lit the cannon's fuse with a sparkler, at which point he and the rest of the group, other than Hines, took cover inside the shop. Indeed, rather than joining the retreat to cover, Hines climbed up a nearby fire escape and began recording the event with the video-recorder on his smart phone. But instead of firing its projectiles, the cannon exploded, and a piece of the resulting shrapnel struck Hines in the head, severely injuring him.

Thereafter, Hines filed a lawsuit against Railserve in the State Court of Clayton County,[3] alleging that Railserve was liable for his injuries under theories of *respondeat superior*, § 317 of the Restatement (Second) of Torts, and negligent supervision. Railserve answered and, following discovery, filed a motion for summary judgment, arguing that all of Hines's theories of recovery failed as a matter of law. And after Hines responded, the trial court held a hearing on the matter, and, applying Kansas law,[4] it granted summary judgment in favor of Railserve as to all of Hines's claims. This appeal follows.

1. Hines first contends that the trial court erred in granting summary judgment, arguing that genuine issues of material fact remain as to whether Railserve is liable under the theory of *respondeat superior*. We agree.

Under Kansas law, the phrase "imputed negligence" or "*respondeat superior*" refers to the doctrine which places upon one individual responsibility for the

---

[3] Hines's complaint states that Railserve's principal place of business is located in Clayton County, Georgia, and Railserve has not contested jurisdiction or venue.

[4] Although this suit was filed in Georgia, the parties agreed and the trial court properly held that Kansas substantive law as to liability applies pursuant to "*lex loci delicti*," which remains the choice of law rule in Georgia. *See Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (621 SE2d 413) (2005). Under "this traditional rule, a tort action is governed by the substantive law of the state where the tort was committed." *Id.* at 809.

4

negligence of another.[5] Specifically, the doctrine of *respondeat superior* makes an employer responsible for the negligent actions of its employees, but only for acts that are for the purpose of the employer's business or acts that are within the scope of the employer's authority.[6] And an employee acts within the scope of employment if "he or she performs services for which he or she has been employed or does anything reasonably incidental to the employment."[7] In fact, the test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, "but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it."[8]

In granting Railserve's motion for summary judgment, the trial court acknowledged that there was evidence that Tim Taylor and Brandon Dawson had supervisory responsibilities at the Ameritrack yard and that both knew about the potato cannon. Additionally, there was evidence that Heisen—who had supervisory

---

[5] *Brillhart v. Scheier*, 758 P2d 219, 221 (Kan. 1988); *accord Schmidt v. Martin*, 510 P2d 1244, 1246 (Kan. 1973).

[6] *Brillhart*, 758 P2d at 221.

[7] *Prugue v. Monley*, 28 P3d 1046, 1050 (Kan. App. 2001).

[8] *Id.* (punctuation omitted).

authority over *all* employees at the yard—directed Dawson to have off-the-clock employees leave the yard. Nevertheless, the trial court ruled that Hines's *respondeat-superior* claim failed as a matter of law because neither Tim Taylor nor Dawson, as agents of Railserve, had a duty to prevent Hines from being harmed. However, contrary to the trial court's assertion, the rule in Kansas is simply that "an employer has the duty not to expose his employees to perils which the employer may guard against by the exercise of reasonable care."[9] And here, there are certainly genuine issues of material fact as to whether both Tim Taylor and Dawson breached that duty by failing to direct off-the-clock employees, including Hines, to stop drinking beer, to stop attempting to detonate a dangerous explosive device, and to leave the premises. Accordingly, the trial court erred in granting summary judgment to Railserve as to Hines's *respondeat-superior* claim.[10]

---

[9] *Smith v. Massey-Ferguson, Inc.*, 883 P2d 1120, 1134 (Kan. 1994); *see also Riggs v. Missouri-Kansas-Texas R. Co.*, 508 P2d 850, 854 (Kan. 1973) (same); *Wrinkle v. Norman*, 301 P3d 312, 313 (Kan. 2013) ("A landowner's duty to both invitees and licensees is one of reasonable care under all the circumstances.").

[10] *See Smith*, 883 P2d at 1134-35 (holding that both employer and supervising co-employee of injured plaintiff owed duty to provide a safe workplace).

2. Hines also contends that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether Railserve is liable pursuant to § 317 of the Restatement (Second) of Torts. Again, we agree.

The Restatement (Second) of Torts § 317, titled the "Duty of Master to Control Conduct of Servant," provides as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.[11]

---

[11] Restatement (Second) of Torts § 317 (1965).

In summary, § 317 recognizes that "the 'special relationship' of employer and employee imposes a duty on the employer to exercise control over the employee acting outside the scope of employment under limited circumstances."[12]

In the case *sub judice*, the trial court acknowledged that employees of Railserve, who had supervisory responsibilities, were aware of the potato cannon and that off-duty employees were drinking beer at the shop shortly before the accident. But the trial court concluded that Hines's claim failed as a matter of law because it held that § 317 of the Restatement does not render an employer liable for its employee's negligence when the resulting injury is to another employee. Specifically, the trial court held that "[t]he plain language [of § 317] connotes that Plaintiff cannot be both a 'servant' and an 'other' from whom the master is under a duty to protect" and contemplates no duty for the master to protect servants from their own negligent acts.

We are not persuaded that the trial court's strained reading of § 317 is required by its "plain language." The term "other" is defined as "that one of two which remains

---

[12] *Meyers v. Grubaugh*, 750 P2d 1031, 1034 (Kan. 1988).

after one is taken, defined, or specified; the remaining of two."[13] But contrary to the trial court's assertion, the use of the term "other" in the context of this section is merely used to distinguish all remaining persons, *i.e.*, those that could suffer the harm from the servant responsible for causing the harm. Indeed, "others" is the simplest and plainest term the drafters of § 317 could possibly use to draw such a distinction. Additionally, the trial court's assertion that a plaintiff cannot recover under § 317 when he contributes to his own harm is simply not supported by any of the language contained in that section of the Restatement. Thus, we do not agree that Hines's status as a servant precludes him from being an "other" under § 317.

Further, the trial court's reading of the Restatement (Second) of Torts § 317 is inconsistent with the Restatement (Second) of Agency § 213 (d), which is to be read in conjunction with § 317,[14] and which provides as follows:

---

[13] The Compact Oxford English Dictionary 1231 (2d ed. 1991). *Cf.* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (noting that courts may turn to a dictionary for the plain, ordinary, and popular sense of a word in interpreting contracts).

[14] *See* Restatement (Second) of Agency § 213 cmt. a (1958) ("The rule stated in this Section is not based upon any rule of the law of principal and agent or of master and servant. It is a special application of the general rules stated in the Restatement of Torts and is not intended to exhaust the ways in which a master or other principal may be negligent in the conduct of his business.").

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.[15]

In fact, Comment b to § 213 further provides that "[t]he rule stated in this Section applies to the liability of the master to his servants, the master being subject to liability to them for his own negligence, even though the act immediately causing the harm is that of a fellow servant for whose negligence to them the master is not liable."[16] Accordingly, even if the language of § 317 could possibly be construed as ambiguous on this particular point, it becomes manifestly clear, when read in conjunction with the Restatement (Second) of Agency § 213, that the use of the term "other" in § 317 includes fellow servants such as Hines.

Moreover, although there does not appear to be any Kansas law specifically discussing whether § 317 imparts a duty upon an employer to protect one employee from being harmed by another employee, cases from other jurisdictions have, in fact,

---

[15] *Id.* § 213 (d) (1958).

[16] *See id.* 213 (d) cmt. b.

acknowledged such a duty.[17] Given these circumstances, we conclude that the trial court erred in granting summary judgment in favor of Railserve as to Hines's § 317 claim.

3. Hines further contends that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether Railserve is liable under the theory of negligent supervision. Once again, we agree.

---

[17] *See Mullen v. Topper's Salon & Health Spa, Inc.*, 99 FSupp2d 553, 556-57 (E.D. Pa. 2000) (noting that in Pennsylvania, an employer may be liable pursuant to the Restatement (Second) of Torts § 317 when employer failed to exercise ordinary care to prevent harm to an employee by another employee acting outside the scope of his employment and occurring on the employer's premises); *Mandy v. Minnesota Mining & Manufacturing*, 940 FSupp. 1463, 1471 (II) (D. Minn. 1996) (holding that pursuant to Minnesota law, § 317 was applicable to hold employer liable when one employee, acting outside the scope of his employment but on employer's premises, harassed another employee); *Platson v. NSM, Am., Inc.*, 748 NE2d 1278, 1285-86 (Ill. App. Ct. 2001) (holding that company intern who was allegedly assaulted by company employee stated a proper claim under Restatement (Second) of Torts § 317); *Kerans v. Porter Paint Co.*, 575 NE2d 428, 432-33 (Ohio 1991) (holding that under Restatement (Second) of Torts § 317, an employer may be liable for one employee's workplace sexual harassment of another employee); *see also Favors v. Alco Mfg., Co.*, 186 Ga. App. 480, 483 (3) (367 SE2d 328) (1988) (holding that "[a] cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment" (punctuation omitted)).

Under Kansas law, negligent supervision is a recognized cause of action, and its focus is upon the actions of someone other than the person whose negligence caused the injury.[18] Specifically, negligent supervision includes not only the duty to supervise, "but also includes the duty to control persons with whom the defendant has a special relationship including the defendant's employees or persons with dangerous propensities."[19] Indeed, liability under a negligent-supervision claim results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor.[20] Furthermore, and unlike many other jurisdictions, negligent supervision in Kansas is a tort separate and distinct from *respondeat superior* in that liability is not imputed but instead runs directly from the employer to the person injured.[21]

---

[18] *Marquis v. State Farm Fire & Cas. Co.*, 961 P2d 1213, 1222 (Kan. 1998).

[19] *Id.* at 1223; *see Nero v. Kan. State Univ.*, 861 P2d 768, 772-73 (Kan. 1993).

[20] *Kansas State Bank & Trust Co. v. Specialized Transp. Svcs., Inc.*, 819 P2d 587, 598 (Kan. 1991).

[21] *Marquis*, 961 P2d at 1225.

And in this matter, the trial court concluded that Hines's negligent-supervision claim failed as a matter of law based on its finding that there was no evidence that Railserve should have foreseen that DeWayne Taylor had a propensity for creating and detonating explosives and, citing *Schmidt v. HTG, Inc.*,[22] based on its finding that the employees who detonated the cannon were off-duty at the time of the incident. But it is not necessary that "the precise nature of the injury alleged by the third-party plaintiff would have been foreseen by the employer."[23] And furthermore, whether risk of harm is reasonably foreseeable is "a question to be determined by the trier of fact."[24] Here, contrary to the trial court's assertions, there was evidence that two Railserve supervisors, Tim Taylor and Brandon Dawson, were on duty at the time Hines was injured and were very much aware of both the construction of the potato cannon and of the fact that DeWayne Taylor and other members of the off-duty maintenance crew intended to fire it at the time they did so. Accordingly, genuine

---

[22] 961 P2d 677, 695 (Kan. 1998) (holding that in Kansas liability of the employer for negligent supervision is predicated on the actions against the customer or co-worker occurring on the working premises and during the time employment services were normally rendered).

[23] *Kan. State Bank & Trust Co.*, 819 P2d at 598.

[24] *Id.*

13

issues of material fact precluded a grant of summary judgment on those grounds asserted by the trial court.[25]

Finally, the trial court also supported its decision to grant summary judgment as to Hines's negligent-supervision claim by adopting the holding of *Beam v. Concord Hospitality, Inc.*[26] There, the United States District Court in Kansas, relying on the Supreme Court of Kansas's opinion in *Balin v. Lysle Rishel Post No. 68*,[27] concluded that Kansas does not recognize the torts of negligent retention or negligent supervision in instances when the plaintiff is an employee alleging tortious conduct by another employee.[28] But in *Balin*, the question of whether the plaintiff was also an employee of the defendant hotel was disputed.[29] And given this dispute, the Supreme

---

[25] *Compare id.* at 598-99 (holding that genuine issues of material fact existed as to whether defendant should have foreseen that an employee posed a danger to a plaintiff/student, who the employee sexually assaulted, and, thus, summary judgment as to plaintiff's negligent retention and supervision claim was not warranted), *with Schmidt*, 961 P2d at 694-96 (holding that summary judgment in favor of defendant/employer was properly granted given that employee's sexual assault and murder of former co-employee occurred well after employee's work hours and did not occur on employer's premises).

[26] 920 FSupp. 1165 (D. Kan. 1996).

[27] 280 P2d 623 (Kan. 1955).

[28] *See Beam* 920 FSupp. at 1167-68.

[29] 280 P2d at 630.

14

Court of Kansas ruled that if the plaintiff was not an employee, his negligent-retention claim failed because "the evidence now under consideration does not show that the master corporation hired an incompetent or unfit servant or employee, or that it retained him in employment after it knew or should have known of his incompetence or unfitness—it does not even show the servant incompetent or unfit."[30] The Court then further ruled that if plaintiff *was* an employee, his claim still failed because

> the act of shooting which caused plaintiff's injuries was not authorized by the master corporation or was not done by its servant and [fellow employee] to advance its interests, and in such circumstances the rule is that the master corporation is not liable in damages to one servant for injuries inflicted on him by the act of his fellow servant.[31]

Focusing on this second part of the *Balin* analysis, the district court in *Beam* reasoned that "it appears that the Supreme Court of Kansas recognized a distinction between third parties and employees and concluded that only third parties could seek recovery under a theory of negligent retention."[32] In doing so, however, the district court

---

[30] *Id.*

[31] *Id.*

[32] 920 FSupp. at 1168.

15

seemingly failed to recognize that the latter part of the *Balin* opinion regarding the fellow-servant rule is no longer applicable within the context of negligent hiring, retention, or supervision claims in light of the fact that "[l]iability exists under either of these doctrines . . . despite the fact the direct cause of injury to the injured person is the negligent or intentional acts of an employee acting outside the scope of his employment."[33] Moreover, the legitimacy of *Balin* as persuasive authority in this regard is also rendered suspect by the fact that it conflates the doctrines of negligent retention and *respondeat superior*—an anachronistic analysis given that those two torts are separate and distinct claims under Kansas law.[34]

Nevertheless, but importantly, it does not appear that the state courts of Kansas have followed the *Beam* decision, and as such, we are not bound by it. Furthermore, the *Beam* opinion stands in stark contrast to the Eighth Circuit's opinion in *Perkins v. Spivey*,[35] which held that "[a] cause of action does exist under Kansas common law

---

[33] *Plains Res., Inc. v. Gable*, 682 P2d 653, 662 (Kan. 1984).

[34] *See Marquis*, 961 P2d at 1225 (noting that the torts of negligent hiring, retention, or supervision are recognized in Kansas as separate torts that are not derivative of the employee's negligence).

[35] 911 F2d 22 (8th Cir. 1990). We recognize that the district court in *Beam* considered *Perkins* but found it unpersuasive. *See Beam*, 920 FSupp. at 1167.

when employers negligently hire or retain employees they know or should know are incompetent or dangerous when another employee is physically injured by the dangerous employee or is emotionally harmed such that immediate physical injury is the result."[36] Finally, and as the district court recognized in the *Beam* opinion,[37] the general language of Supreme Court of Kansas's decision in *Kansas State Bank & Trust Co.* can be read as not precluding an employee's negligent-supervision claim against an employer based on the tortious conduct by a fellow employee.[38] And given all of these circumstances, we decline to restrict such claims in a manner that the state courts of Kansas have yet to adopt. Accordingly, we conclude that the trial court

---

[36] *Perkins*, 911 F2d at 30 (II) (A).

[37] *See* 920 FSupp. at 1165 (noting that the general language of the Supreme Court of Kansas's decision in *Kansas State Bank & Trust Co.* "could be read as supportive of the plaintiff's position").

[38] *See Kan. State Bank & Trust Co.*, 819 P2d at 598 (noting that liability under a negligent-supervision claim results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor); *see also Schmidt*, 961 P2d at 695 (holding that in Kansas liability of the employer for negligent supervision is predicated on the actions against the customer or *co-worker* occurring on the working premises and during the time employment services were normally rendered).

likewise erred in granting summary judgment in favor of Railserve as to Hines's

negligent-supervision claim, and we reverse that decision.

*Judgment reversed. McMillian, J., concurs. Andrews, P. J., concurs specially.*

A13A2223.  HINES v. RAILSERVE, INC.


ANDREWS, Presiding Judge, concurring specially.

Colby Hines sued his former employer, Railserve, Inc., a Georgia corporation, for damages (including punitive damages) as a result of severe injuries he suffered when, as stated in his complaint, "[a] pipe bomb constructed with the knowledge and participation of employees of Railserve who were in the course and scope of employment of Railserve at the time, exploded scattering shrapnel and sending a shard into and through [his] skull. . . ." Hines stated in his complaint – and the record clearly shows – that the pipe bomb exploded on the Railserve premises located in El Dorado, Kansas on September 14, 2010, shortly after Hines had finished his work

day. Hines omitted from his complaint – but the record clearly shows – the following: Hines was aware of the existence of the pipe bomb (made from a metal pipe about three feet long and several inches in diameter) before it exploded. Hines and other Railserve employees and supervisors (some still working and others finished working for the day) knowingly participated in "horseplay" with the pipe bomb as they loaded it with a metal object and explosive powder. Some of the group, including Hines, were drinking beer at the time. Hines placed the metal object in the pipe bomb. Hines handed the fuse to light the pipe bomb to one of his co-workers and watched as the co-worker lit the fuse on the bomb. Unlike his co-workers, who ran for cover before the pipe bomb exploded, Hines climbed up a nearby fire escape about 15 feet above the pipe bomb where he knowingly exposed himself to the explosion while attempting to video the explosion with his mobile smartphone for his own entertainment. After the pipe bomb exploded, co-workers found Hines on the fire escape with a large hole in his head caused by flying shrapnel from the bomb.[1]

---

[1] Hines admitted that he had no memory of the events surrounding the explosion. Nevertheless, he testified in his deposition that he did not load the pipe bomb or help light the fuse "[b]ecause I wouldn't do that." In the face of eyewitness testimony that Hines did, in fact, do those things, Hines's unsupported belief or opinion to the contrary was speculation without probative value. *Hassell v. First Nat. Bank &c.*, 218 Ga. App. 231, 234 (461 SE2d 245) (1995); *Whiteside v. Decker, Hallman, Barber & Briggs, P.C.*, 310 Ga. App. 16, 19 (712 SE2d 87) (2011).

Despite these facts, I nevertheless agree with the majority opinion that the trial court erred by granting summary judgment to Railserve on Hines's negligence causes of action on the limited grounds asserted in the motion for summary judgment. Hines's complaint alleged in three causes of action that Railserve's negligence caused his injuries: (1) that Railserve employees negligently failed to stop the horseplay with the pipe bomb, and their negligence was imputed to Railserve under the doctrine of respondeat superior; (2) that Railserve was directly liable for its negligent failure to stop the horseplay under principles set forth in Restatement (Second) of Torts, § 317 imposing a duty to control employees on its premises acting outside the scope of employment; and (3) that Railserve was directly liable for negligent failure to supervise employees involved in the horseplay. I concur with the majority opinion that Railserve was not entitled under applicable Kansas substantive law to summary judgment just because Hines was a co-worker who was negligent in any degree, or just because some of the horseplay at issue occurred outside the scope of employment and involved negligent acts by other co-workers.

But given the facts showing that Hines knowingly participated in horseplay with the pipe bomb, loaded it with metal, helped light the fuse, and recklessly exposed himself to the exploding bomb, I cannot concur in the majority opinion

3

without stating my view that, under applicable Kansas law, Hines's actions were the sole proximate cause of his own injuries. Under the facts and law, Hines has no business collecting a nickle in damages from Railserve, or putting Railserve to the expense of a jury trial, despite any evidence that Railserve negligently supervised its premises.

Because the pipe bomb explosion and the injuries at issue occurred in Kansas, the majority opinion correctly finds that the Georgia rule of lex loci delicti requires the application of Kansas substantive law to Hines's negligence claims against Railserve. *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (621 SE2d 413) (2005); *Lloyd v. Prudential Securities, Inc.*, 211 Ga. App. 247, 248 (438 SE2d 703) (1993). Hines's negligence claims are governed by Kansas's comparative negligence statute set forth in Kan. Stat. Ann. § 60-258a which requires comparison of the percentages of fault of all alleged wrongdoers.[2] Under the Kansas statute, Hines cannot recover against Railserve on his negligence claims if he is found to be 50 percent or more at fault. *Martell v. Driscoll*, 302 P3d 375, 383 (Kan. 2013); *Negley v. Massey Ferguson, Inc.*, 625 P2d 472, 477 (Kan. 1981). Although determining the amount of

---

[2] Based on its adoption of a statutory scheme of comparative negligence, Kansas has abolished common law assumption of the risk as a bar to recovery. *Simmons v. Porter*, 312 P3d 345, 355 (Kan. 2013).

comparative fault attributable to negligent parties is treated in Kansas as a question of fact, "there is an exception to treating comparative fault as a fact question." *Martell*, 302 P3d at 385-386. Proof that the defendant's negligence was a proximate cause of the alleged harm is an essential element of the plaintiff's claim and is ordinarily a question of fact. *Hale v. Brown*, 197 P3d 438, 440-441 (Kan. 2008). But where undisputed facts susceptible of only one inference show as a matter of law that the plaintiff's own negligence was an intervening cause which superceded the defendant's negligence, the plaintiff's negligence breaks the causal connection between the defendant's negligence and the plaintiff's harm and operates as the sole proximate cause of the harm. *Martell*, 302 P3d at 386; *Puckett v. Mt. Carmel Regional Medical Center*, 228 P3d 1048, 1060-1061 (Kan. 2010); *Hale*, 197 P3d at 441. In that case, the plaintiff's intervening cause absolves the defendant of liability for admitted negligence and there is no apportionment of comparative fault. *Puckett*, 228 P3d at 1061.

The undisputed facts in this case show as a matter of law that Hines's recklessly negligent actions were an intervening cause which operated as the sole proximate cause of his injuries and absolved Railserve of any liability for its alleged

5

negligence. I concur specially only because Railserve failed to assert this defense on summary judgment.[3]

---

[3] In its answer to Hines's complaint, Railserve asserted the defense that any alleged negligence on its part was not a proximate cause of Hines's injuries.